Bullard, J.
On the death of the plaintiff’s wife he became tutor of their minor children, and caused an inventory to be taken which exhibits some tracts of land and personal property as be *230 longing to the community between him and his late wife, and a considerable property belonging to the plaintiff in his own right. It appears that the community property was adjudicated to him, at the appraised value. The wife had brought nothing into marriage, while the husband was rich.
In 1839, about one year after the death of the plaintiff’s wife, and while his children were yet under the age of puberty, he instituted the present proceeding against them, represented by their under-tutor, with a view to the final settlement and liquidation of the community; and he prays for judgment for a balance due to him by his children. In his petition he sets forth the time and circumstances of his marriage with their mother, his own ample fortune and her poverty; their removal from Alabama to Louisiana in 1835; his purchase of a plantation, partly on credit; the payment out of his own means of $8000, before the death of his wife, and, finally, that the entire price of $20,000, was paid by him. He sets forth the purchase of another plantation, which has been paid for since the death of his wife.
The under-tutor filed an answer in which he denies the facts, and requires strict proof; and he claims as community property, the lands and effects stated to be so in the inventory. He alleges, that the plaintiff had cultivated the plantations, and enjoyed the revenues, of which one-half belongs to the minors ; and he concludes by praying for a settlement, liquidation and partition of the community; and he prays for judgment for $20,000, as due to the minor children.
In the month of February, 1841, the plaintiff presented another petition, in which he represents, that in obedience to an order of the Probate Court, he presents himself to render an account of his administration of the estate of his late wife; that he had previously, in 1839, caused a faithful inventory to be taken of all the property belonging to said succession; that, on his application, all the property held in common had been adjudicated to him, at the appraisement value ; that he annexes his account, which contains a true and faithful account of his administration. He represents, that for the two' first years after the purchase of the Manchac plantation, the expenses for carrying it on were very heavy. He *231 prays .for the homologation of the account, and for judgment for the balance in his favor, of $1783.
This account was finally approved and homologated by the Court of Probates, thereby establishing a balance against the minors. The under-tutor has appealed.
It must be remarked, that the plaintiff had no other capacity in which to administer the estate of his deceased wife, than that of tutor of his own and her minor children. He was not an administrator, acting under appointment of the Court of Probates. The question then presents itself, whether a tutor, by any proceeding contradictorily with the under-tutor during the minority of his pupil, can make a valid settlement and rendition of accounts, so as to conclude him on his attaining the age of majority.
The same question presented itself to this court in the case of Stafford et ux. v. Villain et al. (10 La. 319,) in which it appeared, that an account had been rendered contradictorily with the under-tutor, which was opposed to the minor after she became of age as having the force of the thing adjudged. The court on that occasion said: “Tutors, under an order of the Court of Probates must, and without it may exhibit an account of their administration, and the court may make certain orders thereon ; but nothing authorizes it to homologate such accounts, so as to render them conclusive and binding on the minor; for the law gives to the latter the right until the expiration of a certain delay after he comes of age, to examine and contest all the accounts of his tutor. The court, therefore, can in no case relieve and discharge the tutor from his responsibility, as has been done in this case.”
In principle we cannot distinguish that case from the present. Indeed the right of the tutor to render such an account to the under-tutor, implies a correlative capacity on the part of the latter to coerce its rendition, as has, in truth, been attempted in this case, in the shape of a reconventional demand, and a prayer for judgment against the tutor for a certain balance. We are by no means disposed to admit, that art. 301 of the Civil Code, which makes it the duty of the under-tutor to act for the minor whenever the interest of the minor is opposed to that of the tutor, gives him any authority to require a rendition of accounts of the administration. Even admitting that the under-tutor has a right in such cases to *232 exercise any action of the minor, it is obvious that the minor has no such action until the expiration of the tutorship.
It is, therefore, ordered and decreed, that the judgment of the Court of Probates be reversed, and that ours be for the defendant, with costs in both courts, without prejudice to any just claims which the plaintiff may have against his pupils, or to his title under the adjudication to him of the property of the community.