## SUCCESSION OF MRS. LOUIS FOUCHER.

It is the province of Courts of Law, in the interpretation of last wills and testaments to endeavor to ascertain the intention of a testator, and to give effect thereto; provided the ascertained disposition be not contrary to law and public policy.

The testamentary disposition becomes without effect, if the person instituted or the legatee does not survive the testator.

The instituted heirs having taken the whole succession of the testatrix, no part of it could pass by representation to the heirs of a collateral, whose rights as testamentary heir, became legally divested by his predecease.

Accretion takes place for the benefit of the legatees, in case of the legacy being made to several conjointly.

The legacy shall be reputed to be made conjointly, when it is made by one and the same disposition, without the testator's having assigned the part of such co-legatee in the thing bequeathed.

APPEAL from the Second District Court of New Orleans, *Thomas*, J. *A. Pitot*, for appellant. *E. Bermudez*, contra.

ILSLEY, J. The last will of Mrs. Foucher contains the following clause : "I name for my heirs and universal legatees, 1st : My brother, François Saulet; 2. The children of my brother, Balthazar Saulet; 3d. The children of my late sister, Mrs. V. DeGruy; 4th. And the children of my other sister, the late Mrs. A. Foucher, Jr., such as the law itself has provided for "ainsi que la loi l'ordonne."

François Saulet, one of the named legatees, having died before the testatrix, her executor regarding the bequest to him as lapsed, under Article 1690 of the Civil Code, filed a tableau in which he distributed the residue of her estate among the children of Balthazar, and the children of the two sisters of the testatrix, respectively, regarding these heirs as having acquired by accretion under Article 1700 C. C., the share of their predeceased uncle, François.

The heirs of François Saulet opposed this tableau, asserting that they were entitled to one-fourth of the succession.

This pretension is predicated upon their construction of the will, which they maintain, if interpreted conformably to the intention of the testator, would entitle them to their father's share.

It is the province of Courts of law, in the interpretation of last wills and testaments to endeavor to ascertain the intention of a testator, and to give effect thereto, provided the ascertained disposition be not contrary to law and public policy.

The language of the testatrix in the clause referred to, is neither inaccurate nor ambiguous, for had François Saulet survived his sister, no question could have arisen as to the mode of distributing her estate.

32

By his death during the lifetime of the testatrix, her will under Article 1690, would be read as if his name had never been mentioned in it, unless a different intention of the testatrix could be gathered from the face of the instrument; but which could not be sought for aliunde.  *Theall* v. *Theall*, 7 La. 230; Domat b. 3, tit. 1, §§ 6 and 7; Coine Delisle, D. and T., p. 448, No. 15.

It is only where the language of a testator *is* uncertain, that extrinsic evidence can be resorted to, to ascertain his intention.  *Oxley* v. *Clay*, 7 Rob. 425, and the judgment of a Court, in expounding a will should be simply *declaratory* of what is *in* the instrument; and hence the heirs of F. Saulet properly object to the introduction of any extrinsic evidence to prove the intention of the testatrix, for where the enquiry is, what the words of a will express, as distinguished from what the testator meant by the words, *evidence* of *declarations* of intention, of *instructions* given by the testator for preparing his will, or any evidence of a similar nature, is obviously inapplicable to the point of enquiry.  Such evidence, therefore, is for the purpose of such an enquiry, inadmissible.

The opponents' construction of the will, which they contend is warranted by the mode of distribution directed by the testatrix in the use of the words "ainsi que la loi l'ordonne" is, that the testatrix intended that her estate should be distributed among her relatives, in the manner the law provides, had she made no will; and their engagement rests on the consideration that the instituted heirs and universal legatees were her nearest relatives, and as such, would have been entitled to her successssion had she died intestate.

This argument is certainly plausible, but far from conclusive.

The testatrix having no *forced* heirs, was not controlled by the law in the disposal of her property.  It was optional with her to bequeath or withhold from her relatives; and the construction of the clause relied on by the opponents to sustain their position, must yield to the more mutual one that she desired her property to be distributed among her instituted heirs *per stripes*, and not *per capita*.

We are not to presume that the testatrix was ignorant of the law, and unless a contrary intention be manifest, we must suppose that she intended that her will should have its legal effect, which would necessarily exclude her brother, François, and his heirs from any share in her estate.  That such was her intention seems manifest from the fact that, being aware that the demise of her brother, François, rendered void the bequest to him, yet she did not cancel the institution of her other named testamentary heirs and universal legatees, or provide for the heir of François, by a subsequent testamentary disposition in the same manner as she had done for those originally instituted.

The heirs of François virtually claim to come in by *representation* as heirs of their father.

The instituted heirs having taken the whole succession of the testatrix, no part of it could pass by representation to the heirs of a collateral, whose rights as testamentary heir, became legally divested by his predecease. See *A. LeBaun et al.* v. *Trudeau, Testamentary Executor*, 10 An. 164; 1700 C. C.

To recognize these opponents as the instituted heirs of Mrs. Foucher, a new will must be made for her, and this is entirely beyond the power of the Court.

The will of Mrs. Foucher is extant, has been admitted to probate and must be executed, and as there is nothing intrinsic in the words of the disposition expressed in the will to persuade us judicially that the testatrix intended that the legacy to François Saulet should enure to her heirs, we must give effect to Articles 1690 and 1700 of the Civil Code.

The Court below maintained the opposition of the heirs of François Saulet, and its decision must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of the Court below be annulled, avoided and reversed, and proceeding to give such judgment as should have been rendered by said Court : It is ordered, adjudged and decreed, that the opposition of the heirs of François Saulet to the tableau of distribution filed by the testamentary executor of the last will and testament of Mrs. Louis Foucher be dismissed and judgment is hereby rendered against the said opponents, and in favor of her testamentary heirs and universal legatees, viz : the children of her (predeceased) brother, Balthazar Saulet; the children of her (predeceased) sister, Mrs. V. de Gruy; the children of her (predeceased) sister, Mrs. A. Foucher, Jr., recognizing them as the sole testamentary heirs and universal legatees of the said Mrs. Foucher.

It is further ordered, that the tableau of distribution filed by the said testamentary executor, be and the same is hereby approved and homologated; and that the costs of the opposition in both Courts, be paid by the opponents.