33  277
47  955

## No. 7986.

SUCCESSION OF FRANÇOIS E. DUPUY.  WIDOW SAMUEL MOORE VS. DORESTAN DALCOUR, NATURAL TUTOR, ET AL.

ON RULE AGAINST A. J. LACROIX, PURCHASER.

Labiche died in 1872, leaving certain heirs at law, who claimed his estate against one another. They subsequently made a compromise between themselves, by which some of them sold their rights to the others, who, thereupon, entered into possession of the estate and sold its property at public auction. Dupuy bought the property. He afterwards died, and the same property was sold by order of the Probate Court, and bought by Lacroix. This purchaser refuses to accept the title, because, in 1877, five years after the death of Labiche, his last will was discovered, by which he instituted his same legal heirs, his universal legatees, and made a number of money legacies.

Decided that the title is good and the purchaser in no danger of eviction, because the Compromise between the heirs of Labiche was made by all parties in view of the existence of a will and is binding on all of them, and because the special legatees have not recorded their legal mortgage against the property of the testator.

APPEAL from the Second District Court, parish of Orleans.  *Tissot, J.*

### C. E. Schmidt for Plaintiffs on Rule and Appellants:

In the absence of forced heirs, the universal legatees are seized of right of the estate of the deceased. It is upon their heads that all the rights of ownership and possession of the deceased pass at the very moment of his death. It is to them that the maxim applies: "*Le mort saisit le vif.*" But the particular legatees do not represent the deceased. Rev. C. C., Arts. 940 and 1609.

In intestate successions the legal heirs, whether legitimate or irregular (the latter, however, after a decree putting them in possession), represent fully the deceased, are owners and possessors of all he owned and possessed, and debtors for all that was due by him. Rev. C. C., Arts. 941, 942, 943, 944, 945, 949; Rogron, on.Art. 724 C. N.

A particular legatee has a claim for his legacy against the universal legatees or heirs personally, each of whom is bound to discharge the legacy in proportion to the part that falls to him in the succession; and moreover, a mortgage on the immovable property of the succession is granted by law for the security of such legacy. C. C. Art. 1633 (1626).

But the legal mortgage of the particular legatee never was, even under the Code of 1825—one which could exist, as to third persons, without registry. C. C. of 1825, Art. 3298; 22 An. 391, *ib.* 390.

Such a legatee, if he demands a separation of the patrimony of the deceased, preserves his privilege, as against the heirs or representatives of the deceased, on the immovables of the succession, only by recording the evidence of his claim against the succession within three months after it is opened. C. C. Art. 3275 (3242).

Where a person dies leaving no ascendant and no legitimate relations, but two natural daughters, a natural sister, and the son of another natural sister predeceased, and a contest arises between the daughters on the one hand, and the two natural collaterals on the other, as to who is entitled to take as heirs the estate of the deceased, and a compromise is effected between the contestants or litigants in which the two daughters, in consideration of a certain sum paid them, consent to renounce in favor of their opponents—the sister and nephew of the deceased—all rights or pretensions whatever which they have, or might have, either as *heirs, legatees,* or in any other right, to the estate; the subsequent discovery of a will whereby the deceased institutes the two daughters, sister, and nephew aforesaid his universal legatees, could not, in the absence of any evidence of fraud on the part of any of the parties to the compromise, vitiate or annul the same. C. C. 3083 (3050).

The opposition of the natural sister and nephew to the recognition of the natural daughters as the legal heirs of the deceased having, in conformity with the stipulations of the compromise, been maintained and the opponents recognized as the sole legal heirs and put into possession of the estate as such in 1872, the judgment so rendered is final by the lapse of the delays for an appeal. It has, therefore, the force of *res judicata* as to the status of the said opponents as legal heirs.

The only persons who could have contested the rights of the opponents under that judgment, were the natural daughters, and as against them, the compromise duly executed in 1872, has the force of the thing adjudged. C. C. 3078 (3045).

The title acquired by Dupuy in 1873, from the persons who had been recognized in 1872, as the sole heirs of Cyrille Labiche, is therefore unimpeachable by either the legal or testamentary heirs of said Labiche, and the appellee, Lacroix, has not exhibited any valid reason for declining the title tendered him by the representatives of the estate of Dupuy.

### J. L. Tissot for Defendant on Rule and Appellee:

If the buyer is disquieted in his possession, or has just reason to fear that he shall be disquieted by an action of mortgage, or by any other claim, he may suspend the payment of the price until the seller has restored him to quiet possession, or caused the disturbance to cease, unless the seller prefer to give security.

Succession of Dupuy.

There is an exception to this rule, when the buyer has been informed, before the sale, of the danger of eviction.

C. C. 2557 (2535); C. N. 1653, annoted by Dalloz; C. P. 710; 2 An. 384; 9 An. 232; 9 R. 414; and also the notes at the foot of Art. 2557 C. C., and 710 C. P. annoted by Voorhies.

Si l'acheteur est troublé ou a juste sujet de craindre d'être troublé par une action soit hypothécaire, soit en revendication, il peut suspendre le paiement du prix jusqu'à ce que le vendeur ait fait cesser le trouble, si mieux n'aime celui-ci donner caution, ou à moins qu'il n'ait été stipulé que, nonobstant le trouble l'acheteur paiera.

Juste crainte d'éviction. L'acquéreur n'est pas obligé de justifier d'un trouble dans son acquisition; il suffit qu'il ait juste sujet de craindre d'être troublé, soit par un action hypothécaire, soit par une revendication, pour qu'il ait la faculté de suspendre le paiement de son prix jusqu'à ce que le vendeur ait fait cesser le trouble.

Paris, 4 Mai 1816, Jur. générale, vente 1174; Code Napoléon, Art. 1653, annoté par Dalloz.

Pour que l'acheteur soit fondé à prétendre qu'il a juste sujet de craindre d'être troublé, il n'est pas nécessaire qu'il prouve qu'un tiers a sur la chose un droit de propriété, d'hypothéque, etc.; il suffit qu'il signale des faits sur lesquels des tiers puissent baser une prétention menaçante pour lui.

Jur. générale, vente 1172; Dalloz, Code annoté, sur l'Art. 1653 du Code Napoléon.

L'acquéreur menacé de trouble peut, au lieu de suspendre le paiement du prix, demander la résiliation de la vente.

Jur. générale, vente 1189; Dalloz, Code annoté, sur l'Art. 1653 du Code Napoléon.

If the heir *ab intestato* accepts the succession under the impression that there is no will, his acceptance is null, if a will be discovered, of the existence of which he was ignorant. C. C. Art. 981 (976).

He who accepts ought to know under what title the succession is left to him, so that if the instituted heir accepts the succession as coming to him *ab intestato*, the act is null. C. C. Art. 982 (976).

————

The opinion of the Court was delivered by

POCHÉ, J. At a judicial sale of the property depending upon the succession of François E. Dupuy, a lot of ground and improvements, situated in New Orleans, were adjudicated to Adolphe J. Lacroix, who refused to comply with the terms of his bid, on the ground that the vendors of the late Dupuy had no legal titles to the property, and that the purchaser would be in danger of eviction under such defective titles, whereupon the executors of the succession filed a rule for the purpose of compelling the said Lacroix to comply with the terms of the adjudication.

The District Court rendered judgment in favor of the defendant on the rule, and the executors have appealed.

A statement of the facts underlying this controversy is necessary to a proper understanding of the issues presented in the pleadings.

In April, 1872, one Cyrille Labiche died in this city, unmarried, leaving no legitimate issue, but leaving two natural daughters whom he had never acknowledged conformably to the forms of law thereto applicable, and having considerable property, among which was the lot of ground which is the subject-matter of this litigation.

Soon after his death, after searching in vain for a will of the de-

ceased, his two natural daughters, Armantine, wife of J. B. Bozant, and Eugenie, wife of Louis Bourgeau, filed a petition in the probate court, claiming to be recognized as the legal and only heirs of the deceased, and praying to be put in possession of the property left by him.

This petition was met by an opposition interposed by Marcelite Choteau, a natural sister, and Jules Birot, a nephew of Labiche, (by right of representation of his deceased mother, Marie Jeanne Labiche, a natural sister of the deceased,) who claimed to be the only legal heirs of Cyrille Labiche, and specially denied that Armantine and Eugenie Labiche had ever been acknowledged by the deceased.

That litigation ended in a compromise, under which a judgment was rendered recognizing the sister and the nephew as the sole heirs of Labiche, and was followed by a written compromise, by which the natural daughters, for a moneyed consideration, relinquished in favor of Marcelite Choteau and Jules Birot, all the rights and titles which they could claim or urge in the property of the Labiche succession. Subsequently, at the death of Marcelite Choteau, her son and her only heir, Nerestan Haubuchon, succeeded to all her rights, and in June, 1873, under his directions and those of his co-heir, Jules Birot, all the immovable property belonging to the succession was sold at public auction, and at that sale F. E. Dupuy purchased the lot of ground under discussion, obtaining for the same an authentic sale with full warranty, under date of August 20th, 1873, from Nerestan Haubuchon and Jules Birot in their capacity of heirs of Labiche, as above set forth.

Now, in 1877, five years after the death of Labiche, an authentic will of the deceased was found among the archives of Amédée Ducatel, a notary public in this city, before whom the will had been enacted on the 8th of November, 1866, containing the following particular legacies of immovable property :

First. To his two natural daughters, Armantine and Eugenie, he gave a piece of real estate on St. Ann street between Robertson and Claiborne streets.

Second. To Louise Valentin, house No. 10 on Prieur street.

Third. To his sister, Marcelite Choteau (or, in her default, to her son, Dorestan Aubuchon,) the house No. 11 Prieur street.

Fourth. To his nephew, Jules Birot, house No. 12 Prieur street.

And he then made the following particular legacies of sums of money, viz :

1. To his granddaughter, Rosa Roubiau....................  $ 500 00
2. To Alfred, son of Felix Valentin........................   200 00
3. To his godchild, Alcée Cyrille Hains....................   200 00
4. To his godchild, Jules Auguste..........................   200 00
5. To his godchild, Theresa Pitt...........................   200 00

6. To Ursule Dubois.................................... 200 00

    Total amount of the legacies of money............. $1500 00

After making these particular legacies the testator continued, and made the following testamentary disposition:

"Je veux et entends que toutes les propriétés dont je n'ai pas disposé par le présent testament et que je pourrais laisser au jour de mon décès, soient vendues, et que le produit de la vente de ces propriétés, ainsi que l'argent comptant que je pourrais avoir en banque on ailleurs, et le montant des billets hypothécaires, ou autres, qui pourront m'être dus, soient répartis, après paiement de mes dettes, des legs ci-dessus faits et de tous frais pour le règlement de ma succession, soient répartis, je le répète, entres mes deux filles surnommées, *Armantine et Eugénie Labiche; Marcelite Choteau*, ma sœur, et à son défaut, Dorestan Aubuchon, son fils; *Marie Louise Valentin*, et mon neveu, *Jules Birot*, par égales portions; les nommant et instituant *mes légataires universels*."

From the evidence it appears that *Louise* Valentin, instituted as a particular legatee, and *Marie Louise* Valentin, instituted as universal legatee, was one and the same person, and that she died before the testator.

This will was filed in the probate court on the 2d of May, 1877, but no demand has ever been made for the registry and execution of the same.

Now, defendant in the rule, averring that the existence of said will having been fraudulently concealed by Marcelite Choteau and Jules Birot, who were, in consequence, illegally and fraudulently put in possession of the property left by Cyrille Labiche, they acquired and could convey no legal title in the property of said succession; and, averring further, that the instituted heirs and legatees are now preparing to revendicate their title to said property, he alleges that he cannot be compelled to accept such title, and he prays for judgment, annulling the adjudication made to him on the 10th of April, 1880.

The legality or validity of the title acquired by F. E. Dupuy, on the 20th of August, 1873, is, therefore, the vital question presented for solution in this case.

We shall consider what rights to the property could be urged, first, by the two natural daughters; next, by the natural sisters or their representatives, and finally by any of the other legatees under the will. We must, however, premise that in our opinion, by the death of Louise Valentin, who was a particular as well as a universal legatee before the death of the testator, her shares of the legacies in her favor reverted to the mass of the succession, as undisposed of by particular legacy, and, therefore, inured to the other instituted universal legatees, who are

shown to be Armantine and Eugenie Labiche, and Marcelite Choteau and Jules Birot.

Having never acknowledged his natural daughters, the testator had no forced heirs, and was, therefore, free of any restrictions in his testamentary capacity.  In unmistakable language he instituted Louise Valentin, his two natural daughters, his sister and his nephew, as his universal legatees, providing specially that all property which he did not dispose of by particular legacy should be equally divided between them.  Now, Louise Valentin having died before him, the legacies in her favor became without effect (C. C. Art. 1697), and the portion intended for her being thus undisposed of, inured by accretion to the benefit of the other universal legatees.  C. C. Art. 1707; 4 N. S. 252; Parkinson vs. McDonough, 10 An. 64; Lebeau vs. Trudeau, 18 An. 409; Succession of Foucher.

It, therefore, follows that under the execution of the will, the two daughters, the sister and the nephew, would have become the sole and joint owners of all the immovable property owned at his death by Cyrille Labiche.  By the compromise of June, 1872, all the rights which the two daughters could, *in any capacity*, claim in and to any property of the Labiche succession, were transferred to, and acquired by, Marcelite Choteau and Jules Birot, as shown by the following stipulations in said act of compromise:

"Nous soussignées, Marie Armantine Labiche, épouse de Jean Baptiste Bozant, et par lui dument assistée et autorisée, et Eugenie Labiche, épouse de Louis Bourgeau, et de lui dument assistée et autorisée, reconnaissons, par les présentes, avoir reçu de Made. Marcelite Choteau et de Mr. Jules Birot, en leur qualité de seuls et uniques héritiers de feu Cyrille Labiche, la somme de cinq mille quatre-vingt trois piastres cinquante-cinq cents et demi, montant qui nous revient d'après le compromis fait entre nous, laquelle somme est reçue par nous en paiement et en pleine et entière satisfaction de tous les droits, titres, prétensions et réclamations, que nous avions ou pouvions avoir à exercer sur les biens de la succession du dit feu Cyrille Labiche, soit comme héritières, légataires, ou à d'autres titres.

" En conséquence, nous donnons par les présentes à la dite Marcelite Choteau et au dit Jules Birot, bonne et valable quittance et décharge de la dite somme de $5083 55½, et en considération du paiement à nous fait de cette somme, nous cédons, abandonnons et transférons à la dite Marcelite Choteau et au dit Jules Birot, tous les droits, de quelque nature que ce soit, que nous pouvons avoir sur les biens dépendant de la succession du dit Cyrille Labiche, lesquels biens appartiennent aujourdhui à la dite Marcelite Choteau et au dit Jules Birot, pour avoir été reconnu comme les seuls et unique héritiers du dit Cyrille Labiche,

par un jugement rendu le six du présent mois par l'Honorable ,Seconde Cour de District pour la paroisse d'Orléans."

. It is very clear from the evidence, both intrinsic and extrinsic, that the only consideration of this compromise on the part of Marcelite Choteau and Jules Birot, the natural sister and nephew, was the relinquishment by the natural daughters of all rights of any nature whatsoever, which they could then or thereafter claim or acquire to any property depending upon the Labiche succession.

The evidence shows that all these parties sincerely believed that the deceased had left a will, and that every one of them was very hopeful of having been remembered by the testator in his munificence. Hence, it is that immediately after his death a diligent search was made for his will, inquiry having been made at the very notary's office, where the instrument was found five years later. But at that time the search was fruitless, and, therefore, with a view to adjust the differences between the claimants and the opponents, the above recited compromise was entered into. The evidence clearly negatives the charge that. Marcelite Choteau or Birot fraudulently, or in any manner, concealed the existence of the will, or committed any fraud in aid of their claims. to the succession property. But they guarded against the possible discovery of a will by obtaining from the natural daughters a transfer of such rights as they might acquire as legatees.

Both in law and in equity, the latter are irrevocably bound by this compromise, which to them has a force equal to the authority of the thing adjudged, C. C. Arts. 3078, 3083, and absolutely debars them of the right of contesting the titles which, as vendors, they are bound to warrant.

Even if it could be urged that at the date of the compromise they had no rights as heirs, and, therefore, no title to the property which they pretended to sell, any claim which they could now set up would be easily defeated under a well-settled principle of our jurisprudence, providing that the title which they subsequently acquired at the discovery of the will, and as legatees thereunder, must inure to the benefit of their vendees. 12 M. 185, 649; 5 N. S. 248; 9 L. 100; 12 L. 170.

The titles of Dupuy to the property in question are, therefore, invulnerable against any act emanating from either Armantine or Eugenie Labiche.

As to Birot and Haubuchon, it is argued that their acceptance of the succession as heirs became a nullity by the subsequent discovery of the will instituting them universal legatees, under the effect of Arts. 981 and 982 of the Civil Code, which read, respectively, as follows:

" Art. 981.—If the heir ab intestato accepts the succession under

the impression that there is no will, his acceptance is null, if a will be discovered, of the existence of which he was ignorant."

" Art. 982.—He who accepts ought to know under what title the succession is left to him; so that if the instituted heir accepts the succession as coming to him *ab intestato,* the act is null."

But as a matter of fact, it is apparent from the precaution which they took to guard against the effect of a will, which they believed to be in existence, that they could claim to have acted in the utter ignorance of the existence of a will.

But how could Birot and Haubuchon, the vendors of Dupuy, with full warranty, be heard to contest his titles ? Who, therefore, could invoke the nullity of their acceptance ? It could not be urged by the two natural daughters, who, under the stipulations of their compromise, had severed their connection with the estate, nor could it be urged by the other legatees of particular legacies, whose rights are confined to claiming their legacies from the heirs or legatees in the proportion of the immovable property of the succession withheld by them, or to follow the property by the hypothecary action, in case their legal mortgage had been preserved by inscription.   Birot and Haubuchon, as vendors, are bound to warrant the titles of their vendee, who is entitled to the benefit of the rights which his vendors subsequently acquired under the discovery of the will instituting them universal legatees.   See the authorities quoted above on this point.   See, also, Laurent, vol. 24 ، ₰ 209;  Duvergier, vol. 1, ₰ 219.   The nullity resulting under these two articles of our Code might or could be urged by Birot and Haubuchon against all parties but their vendees of the property acquired by them under their acceptance of the succession.

There is, therefore, no danger of eviction under the Dupuy titles from the suit threatened by either Birot or Haubuchon.

As to the claim of the particular legatees of sums of money, we have already shown that their demands are confined to two manners of proceeding.   They must call on the heirs or legatees, or on the testamentary executors.   C. C. 1630.

In default of satisfaction from either of these sources, the law has provided a legal mortgage in their favor on the immovable property of the succession.   C. C. 1633.   But under Art. 3275, C. C., this mortgage, in order to be preserved, must be recorded within three months after the succession is opened.   22 An. 392, Ogle vs. King.

The will of Cyrille Labiche, which is the evidence of their claim, has been discovered since May, 1877, and to date it has not been recorded, nor has any step been taken to execute the same.

The mortgage granted by law in their favor, in order to have effect as to third persons, should, under our laws, conforming with both the

Constitutions of 1868 and 1879, be inscribed, in default of which, as is the case here, it cannot reach the succession property now owned by third persons.

Hence, the legal mortgage to which this property, as part of the immovable property of the Labiche succession was subject, is now stripped of any force and effect through the laches of these legatees themselves, and it follows that Dupuy's titles are beyond the reach of their attack.

It is, therefore, clear that the fears of eviction urged by Lacroix, the purchaser, are groundless, and we conclude that he should be held to the terms of his purchase.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and, proceeding to render such a judgment as should have been rendered, it is ordered, adjudged and decreed that the rule taken by the executors of the succession of François Edmond Dupuy, against A. J. Lacroix, to compel him to comply with the adjudication made to him on the 10th of April, 1880, be made absolute; and that the said Lacroix be condemned to comply with the terms of said adjudication, in default of which a writ of *distringas* shall issue, after legal delays, against his property, to enforce his compliance with the order, and that he pay the costs of this rule in both courts.

The Chief Justice takes no part, having been of counsel in the matter.