JANVIER, Judge.
This is a suit for a declaratory judgment. On appeal to the Supreme Court the matter was transferred to this Court for the reason, as stated by the Supreme Court, that “the record * * * does not affirmatively show that the value of the property in contest exceeds $2,000 * *
*925 Plaintiff appealed from a judgment dismissing her suit on exceptions of no cause of action and no right of action. Thus the facts as alleged must be accepted as true as, in fact, it is agreed they are.
Isaac Williams died on October 17, 1930, leaving a last will in which appears the following:
“I give at my death to my sister, Fannie Clements, the usufruct of my property, Nos. 2615-2617 Gravier Street for and during her life, and the naked ownership of the said property to Estella Franklin and Louzetta Ford.”
The Estella Franklin mentioned is the Estella Temple Franklin who is plaintiff in the present suit. In the succession proceedings of Isaac Williams the two legatees named, Estella Franklin and Louzetta Ford, were sent into possession of the real estate referred to as 2615-17 Gravier Street, and they maintained that undivided possession until the death of Louzetta Ford fifteen years later in 1945. Louzetta Ford left a son, John Headley, Jr., and no other heirs. Fannie Clements, to whom the usufruct of, the property was left, died on September 1, 1953. In the matter now before us Estella Temple Franklin seeks to be declared the sole owner of the property, contending that, on the death of Louzetta Ford she, Estella Temple Franklin, already the owner of an undivided half, as the result of accretion, became the owner of the undivided one-half which had belonged to Louzetta Ford until her death.
Plaintiff made John Headley, Jr., a nonresident, defendant and she prayed that a curator ad hoc be appointed to represent him. Robert H. Gipson, Jr., an attorney at law, was appointed, and, on behalf of Headley, filed the exceptions which were sustained and which are now before us.
It is conceded, of course, that the legacy was conjoint and that, accordingly, it was such as is contemplated by Article 1707 of our LSA-Civil Code which reads as follows :
“Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several conjointly.
“The legacy shall be reputed to be made, conjointly when it is made by one and the same disposition without the .testator having assigned the part of such co-legatee in the thing bequeathed.”
It is also conceded, of course, that, where there is a conjoint legacy and prior to the death of the testator one of the legatees dies, the remaining legatee, as the result of accretion, succeeds to the rights of the predeceased legatee.
Thus, if Louzetta Ford had died before the death of Isaac Williams and there had been no change in the last will of Williams, Estella Franklin, as a result of the effect of that codal article, would have succeeded to full naked ownership of the property. Here, however, the legatee, Louzetta Ford, who, by the judgment of possession, had been converted from conjoint legatee to owner of an undivided half, survived the testator by fifteen years. But it is argued that, since there had been no partition of the property between the two undivided owners, accretion- which is provided for in the codal article continued to apply, with the result contended for.
This argument is based on the fact that in the article under consideration (LSA— C.C., Art. 1707) there is no express provision to the effect that accretion shall take place only where the death of one conjoint legatee precedes the death of the testator.
This article of our Code is identical in meaning with Article 1044 of the Code Napoleon, the translation of which reads as follows:
“There shall be ground for increase for the benefit of legatees, in the case *926 where the legacy shall be made to several conjointly.
“The legacy shall be taken to be made conjointly when it shall be so by one single and the same disposition, and when the testator shall not have assigned the proportion of any of the colegatees in the thing bequeathed.”
We find also that Planiol, in his Civil Law Treatise, Volume 3, Part 2, refers to Article 1044 of the Code Napoleon, saying:
“Accrual presupposes that there are several legatees all of them entitled to receive the same whole thing. If all together claim it, a distribution among them takes place. If the bequest of one of them lapses, his share accrues to the remaining legatees, so that each of them will receive a little more because there is one less person entitled.
“Legatees called to take the same bequest together are called ‘joint legatees.’ "
After reading these articles and the comment of Planiol we cannot escape the conclusion that our Codal article and the article of the Code Napoleon have application only when one of the conjoint legatees dies before the death of the testator.
There are several cases in the jurisprudence of this State in which our courts have considered our article, and in each it has been held that, where the death of such a legatee precedes the death of the testator, accrual or accretion comes into play, and in each of the cases the court expressly referred to the fact that one of the conjoint legatees had died before the testator. If accretion should take place even after the death of the testator, there was certainly no reason for the Court in each case to refer to the fact that the conjoint legatee had died first.
In Succession of Villa, 132 La. 714, 61 So. 765, 769, in discussing the case of Parkinson v. McDonough, 4 Mart., N.S., 246, the court said:
“Our decision was that the legacy was conjoint, and consequently that the portion of one of the legatees who died before the testator went by accretion to the survivors. * * * ”
In Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, the Supreme Court of the United States discussed the Louisiana jurisprudence on the subject and said:
“ * * * Where the whole thing bequeathed is given to two persons, if one of them fails to receive the benefit of the disposition, either because he dies before the testator, or is incapable to take it, or refuses to take it, or because as to him it is revoked, the whole goes to the other legatee by accretion ; * * *
In Succession of Lambert, 210 La. 636, 28 So.2d 1, the Supreme Court stated that Albert Lambert, one of the legatees, had “predeceased the testator.”
In Succession of Dupuy, 33 La.Ann. 277, the Court referred to the fact that Louise Valentin had died “before the death of the testator.”
In Succession of Hunter, 45 La.Ann. 262, 12 So. 312, the Supreme Court said:
“ * * * Accretion is based upon the theory that the title to the thing bequeathed is conveyed, in its entirety, to each and every one of the legatees named, and that hence, when one or more of these legatees happen to die before the legacy vests, this fact leaves the title intact in each of the survivors in its entirety, but with simply fewer persons to share in it on partition.”
As already stated, it is true that in no one of those cases does the Court expressly say that only where the legatee dies first should accretion take place, but we cannot read those decisions without concluding that that was what was meant in each. A hold *927 ing as contended for here would produce a most undesirable result for the reason that, where there is a conjoint legacy and all conjoint legatees survive the testator, it would be highly desirable that each immediately effect a partition since, should anyone of them die, the surviving legatees would succeed to the interest of the deceased and the heirs of the deceased would inherit nothing. It might well be that for economic or other reasons it would be most unwise to force a partition of such property, yet because of the possibility mentioned it would be very unwise for any of the legatees of their respective heirs to permit the ownership to remain undivided.
In reaching the conclusion which we have, we also take into consideration Articles 940, 947 and 1014 of our LSA-Civil Code under which it is obvious that from the moment of death such conjoint legatees become owners and no longer are legatees and that, therefore, the reference to conjoint legatees ceases to have effect as soon as those legatees become undivided owners.
In IS Tulane Law Review 576, 580, in an article entitled “Seisin in the Civil Law and in Louisiana,” the author directs attention to the fact that in such case the legatee becomes the owner “from the moment of death, so that his rights are fixed at that time.”
Our conclusion is that the contention of plaintiff is without merit.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.