*PARKINSON & AL.* vs. *M'DONOUGH & AL.*

APPEAL from the court of probates of the parish and city of New Orleans.

Accretion takes place among legatees in case of the legacy being made

MATTHEWS, J., delivered the opinion of the court.   In this case the plaintiffs claim, by accretion or right of survivorship, a certain

portion of the estate of Shepherd Brown, deceased, held and administered by the defendants, as testamentary executors.

East'n. District.
*February* 1826.

PARKINSON
& AL.
*vs.*
M'DONOUGH
& AL.

The question submitted for the decision of the court, depends on a just and legal interpretation of a clause in the will of the testator Brown, by which he bequeathed to four of the orphan children of Godfrey Duher, then under his charge and protection, one share or one eighth part of his property: and this question is limited to a decision on the respective rights of these co-legatees, as based on the doctrine of accretion or survivorship, and the legal heirs of one of them, who died before partition or having obtained possession of his share of the legacy, and before the period at which, according to the terms of the will, the executors were bound to deliver it to him.

to several conjointly, though the testator should by a subsequent member of the sentence in which this bequest is made, assign a part to each legatee.

The judgment in the court of probates being against the right of accretion, under the clause of the testament above alluded to, the plaintiffs appealed.

In cases of doubtful or equivocal expressions in testaments, when disputes arise on matters to which they relate, it is a primary

VOL. IV. (N. S.)          32

PARKINSON
& AL.
*vs.*
M·DONOUGH
& AL.

duty of courts of justice to ascertain with all possible precision the intention of the testator, and if it be consistent with law, to give it effect. The clause of the will now under consideration, and on which the present contest arises, is expressed in the following terms. " I will, and bequeath to the orphan children of my old friend Godfrey Duher, and which are now under my charge, and are named Mary, Nancy, James, and Eliza, one share, or one eighth part of all my property, to be equally divided among them; the same to remain in the hands of John Hiram Brown and my friend John M·Donough, and by them employed in the education and support of them, and the balance remaining after this, if any, to be paid to them as they arrive at age or marry, recommending particularly to my friend and nephew the guardianship and protection of these my adopted little ones." We find here expressed a fatherly affection towards these orphans on the part of the testator. This affection probably grew in part out of the friendship which seems to have subsisted between him and their deceased father; but was no doubt perfected, and received its greatest strength from the circumstance of their having been

thrown, helpless, under his charge and protec-
tion.   By performing the offices of a father to-
wards them, they became unto him as children:
he calls them his adopted, and as such, no
doubt, intended to provide for them by this
clause of his will, and that they alone should
take the property bequeathed by it, in exclu-
sion of all others, for their mutual benefit, or in
legal terms conjointly.   Believing this to have
been the intention of the testator, it remains to
enquire whether it be expressed in such a man-
ner as to authorise the court, in pursuance of
law, to give it effect.   The cause has been ar-
gued somewhat elaborately by the counsel for
the appellants, and in the argument, the court
has been referred to decisions of the court of
chancery of England, on the construction or
interpretation of testaments, in relation to the
vesting of legacies, &c.; to treatises on the
civil law; and to *Toullier on the Code Na-
poleon;* also to the *Civil Code* lately in force.
On this last authority the counsel for the ap-
pellees relies, and did not argue the case, as
its decision in any way will not affect their
interest.   We have examined attentively the
texts and commentaries found in the two
last authorities, as containing doctrine most

East'n. District.
*February* 1826.

PARKINSON
& AL.
*vs.*
M'DONOUGH
& AL.

PARKINSON
& AL.
vs.
M'DONOUGH
& AL.

applicable to the point in dispute. We have already quoted the clause in the will, which gives rise to the contest; and as it regards the facts of the case, it is only necessary to state that James, one of the co-legatees, died before marriage, or arriving at the age of majority.

The rules laid down on the subject of accretion, in relation to testamentary dispositions, are contained in arts. 195, 196, and 197, at page 250 of the former code. Art. 195, on the interpretation of which the present question depends, is expressed in the following words: "Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several *conjointly*. The legacy shall be reputed to be made conjointly, when it is made by one and the same disposition, without the testator having assigned the part of each co-legatee in the thing bequeathed.

This article of our code is *verbatim* similar to the 1044th of the *Code Napoleon.*

The testator, in the present case, bequeaths to four persons one eighth part of his estate, to be divided equally among them. Is this a legacy made without assigning to each co-legatee his part in the thing bequeathed?

The thing bequeathed is one eighth part of
the testator's succession, which he gives to be
equally divided between four persons, to
whom the bequest is made conjointly, ac-
cording to the first member of the sentence;
but according to the second, they are to par-
take of it in equal portions. Considering both
as constituting one and the same disposition,
it would seem that the part of each co-legatee
was assigned in the thing, and that one fourth
of the one eighth of the testator's estate was
vested in each of these legatees separately,
consequently they cannot acquire from each
other by accretion or survivorship. This
would perhaps be a construction most readily
given to the clause of the will now under dis-
cussion. But it is contended, for the appel-
lants, that the terms in which this bequest is
made, must be so construed as to give the full
force of a complete testamentary disposition
to the first member of the sentence, which is
in itself perfect, in point of sense, meaning,
and intention: the second only relating to the
manner of executing or carrying into effect
the disposition thus made.

Notwithstanding the apparent simplicity of
the principles to which the code seems to have

East'n. District.
*February* 1826.

PARKINSON
& AL.
*vs.*
M'DONOUGH
& AL.

reduced the doctrine of accretion, (which was held to be the most subtle of the civil law) still the application of those principles to cases arising under it, is not entirely free from difficulty.

If the interpretation contended for by the appellants be tolerated by law, it will afford the means of giving effect to the intention of the testator in the present case.

In order that accretion may take place among co-legatees, it is necessary, according to the code, that they should be *conjuncti re et verbis;* except in cases where things bequeathed to several persons separately, are not susceptible of division without deterioration; a circumstance which authorises accretion, *inter conjunctos re tantum.*

The distinction between a bequest of a thing to many in equal portions; and one wherein a testator gives a legacy to two or more individuals, to be divided in equal portions; appears at first view extremely subtle and refined. The difference of phraseology in those two modes of bequeathing is so slight as not readily to convey to the mind any difference in ideas, and can only produce this effect by separating the members of the sen-

tence in the latter phrase; in truth to create two distinct sentences, each complete in itself with regard to sense and meaning; the one relating to the disposition of the will, the other to its execution. We might hesitate much in adopting this method of construction, were it not sanctioned by the authorities cited in behalf of the appellants: the doctrine contended for is fully supported by the *Commentary of Toullier*, on the 1044th article of *Code Napoleon*, which we have already shown to be precisely similar to that of our own code on the same subject. See 5 *Toullier, p.* 645, 646, *and* 647, *nos.* 689, 690, 691, *and* 692.

From this examination of the cause, it is readily perceived that the law against substitution is inapplicable to the question before the court.

It is therefore ordered, adjudged, and decreed that the judgment of the court of probates be avoided, reversed, and annulled, and that the case be remanded to the court of probates, to be proceeded in *de novo* according to law.

*Watts & Lobdell* for the plaintiffs, *Grymes* for the defendants.