## No. 11,109.

### SUCCESSION OF WILLIAM WALLACE HUNTER.
### OPPOSITION TO ACCOUNT OF EXECUTORS.

1. Accretion is based upon the theory that the title to the thing bequeathed is conveyed *in its entirety* to *each and every* one of *the legatees named,* and that hence when one or more of the legatees dies before the legacy vests, this fact *leaves the title intact in each of the survivors in its entirety* but *with simply fewer persons to share in it onrpartition.* The word *accretion* is not strictly exact, it should rather be *non-decretion.*

2. Where a testator, after appointing testamentary executors " with seizin of his (my) estate to administer and apply the same as hereinafter written, viz., all and every sum of money of which I die possessed, and all and every article of value pertaining thereto which may accrue to his (my) estate," next makes nine separate legacies of $1000 in gold to each of nine persons, closes his will with the clause " I desire should any money or aught of value accrue to my estate from any c aim exhibited in the papers which I leave or otherwise, that the same be paid severally and proportionally to the persons named and stated in this paper, to whom I leave cash in gold," three of the special legatees die before the testator there is no room for the application of the doctrine of accretion. The will contains no " disposing clause" of the remainder, which is referred to by way of payment to and distribution, and not by way of bequest. The " title " to the remainder never vested in the nine legatees or any of them.

3. The clause can only be considered from the standpoint of a "payment," and when so considered the testator obviously directed that each of the nine special legatees should separately receive one-ninth of the remainder after payment of the special legacies, debts, charges and costs.

The six survivors neither gained nor lost by the death of the three others, and the lapsed legacies devolved on the legal heirs.

A PPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Brown & Choate* and *Beattie & Beattie* for the Executors and the Legatees, Appellees:

A clause in a will which says: "I desire, shou'd any money or aught of value accrue to my estate from any claim exhibited in the papers which I leave or otherwise, that the same be paid severally and proportionally to the persons named and stated in this paper, to whom I leave cash in gold," is a universal legacy. C. C. 1606; Marc. Vol. IV, C. N., 1003; Toullier, Vol. V, 505; Duranton, Vol. V, 170, 180; 3 An. 707; 2 An. 580.

All legacies lapse by the death of the legatee before the testator. C. C. 1697; Suc. Burnside, 35 An. 715.

A universal legatee profits by the lapse of all other legacies. C. C. 1704.

Accretion takes place in favor of all legatees of a conjoint legacy. C. C. 1707.

A legacy is conjoint unless each legatee is called to a specific and particular share of estate; in other words is a legatee under a universal title. Duranton, Vol.' V, 507; 10 An. 164; 18 An. 409; 12 Rob. 67; Delvincourt, Vol. II, p. 341.

*Henry C. Miller* for the Opponents, Appellants:

A will to nine legatees of one thousand each in gold is not a conjoint legacy. So in the event of the deaths of three of the legatees, before the testator, the portions that would have been inherited by them do not accrue to the six surviving legatees, each of whom are restricted under the will to $1000 and no more, unless they are made residuary legatees. Civil Code, Art. 1706 to 1709; Parkerson vs. McDonough, 4th N. S., p. 246; Lebeau vs. Trudeau, 10 An. 164; Mackie vs. Story, 93 U. S., p. 589.

The testator after the above disposition of his gold adds in another part of his will: "I desire, should any money or aught of value accrue to my estate from any claim exhibited in the papers which I leave or otherwise, that the same be paid severally and proportionately to the persons named and stated in this paper, to whom I leave cash in gold." This subsequent disposition can have no application to the gold, the subject of the first disposition, for it manifestly refers to property other than the gold—that is, other property the testator thought might accrue to his estate, hence this subsequent disposition does not make the six surviving legatees residuary legatees of any portion of the gold left by him at his decease.

Indeed, if the subsequent disposition of the will could be deemed a universal legacy of any of the gold—*i. e.*, the gold bequeathed to the three deceased legatees or of any other property the deceased left, not disposed of by his will, then the supposed universal legacy is in favor of nine persons, each for his several and pro-

portional part, and as three of the nine died before the testator, the parts they would have taken accrue to all the legal heirs of the testator. In other words, neither the supposed residuary legacy or the gold legacies are conjoint, so as to give to the surviving six legatees the portion of the testator's estate he bequeathed to the three deceased legatees. See authorities above cited, and Civil Code, Arts. 1606 and 1612; 12 Rob. 56, 63.

It follows that the deceased died intestate, except to the extent of six thousand dollars bequeathed to the six surviving gold legatees, and all the property left by him, in excess of six thousand dollars in gold, accrues to his legal heirs in the absence of any residuary legatee. Civil Code, Arts. 1697, 1709.

The opinion of the court was delivered by

NICHOLLS, C. J. William Wallace Hunter, a resident of the city of New Orleans, died in that city on the 3d of June, 1892, leaving an olographic will dated 1st of May, 1884, from which we extract the following portions bearing upon the controversy which has arisen in this case:

"This is my olographic will and testament. I do name and appoint William C. Raymond and Frederick Stringer my sole excutors, without bond, with full seizin of my estate, *to administer and apply the same as hereinafter written*, viz.: all and every sum of money of which I die possessed, and all and every article of value pertaining thereto and which may accrue to my estate.

"I give and bequeath to my niece, Mrs. Mary Ann Raymond, one thousand dollars cash in gold.

"I give and bequeath to my niece, Mrs. Carolina Gerault, one thousand dollars in gold.

"I give and bequeath to my niece, Miss Henrietta Bernett, one thousand dollars in gold.

"I give and bequeath to my nephew, William Hunter, one thousand dollars in gold, and cancel and absolve him from the payment of all his written obligations to me which may be found among my papers.

"I give and bequeath to my grandnephew, William W. Hunter, one thousand dollars in gold.

"I give and bequeath to my niece, Miss Phœbe I. Tompkins, one thousand dollars in gold.

"I give and bequeath to my niece, Miss Matilda Hunter, one thousand dollars in gold.

"I give and bequeath to my niece, Miss Debbe Le Sassier, one thousand dollars in gold.

Succession of Hunter.

"I give and bequeath to my niece, Mrs. Georgia Maybin, one thousand dollars in gold  *  *  *

"I desire, should any money or aught of value accrue to my estate from any claims exhibited in the papers which I leave, or otherwise, that the same be paid severally and proportionately to the persons named and stated in this paper to whom I leave cash in gold."

We have not copied the portions of the will wherein he disposes of such small articles as breastpins, watch, gold cane, etc., etc., to different persons.

This will was probated, and the executors named qualified as such.

An inventory was taken in the succession, from which it appears that the deceased left $13,630 in gold, and a few movables to which no special reference is necessary.

Three of the legatees to whom $1000 in gold were left, viz.: Mrs. Georgia Bennett Maybin, Mrs. Caroline Gerault and Mrs. Mary Ann Raymond, died before the testator.

On the 30th June, 1892, the executors filed their final account, which shows a net amount of $12,433 for distribution. The executors, reciting in their account the death of the three legatees, proceed to divide this amount into six equal portions of $2008.53⅔, and which they propose to pay over to each of the six surviving legatees, stating their authority for this action to be the clause of the will directing that "should any money or aught of value accrue to my estate from any claim exhibited in the papers which I may leave, or otherwise, the same be paid severally and proportionately to the persons named and stated in this paper to whom I leave cash in gold."

The homologation of this account was opposed by a portion of the legal heirs of the deceased. That the opponents are such seems to have been conceded throughout the proceedings, and our opinion is based upon that fact as being admitted. The parties contend that under the terms of the will all the gold left by the deceased over and above $6000 specially bequeathed remained undisposed of, and together with the amount of the legacies which lapsed by death devolved upon the legal heirs, under Article 1709, while the executors claim that by the clause of the will on which they base their action the nine legatees were instituted universal legatees and on the death of three of these the whole succession, over and above the special legacies, debts, charges and costs devolved upon the six survivors.

We are relieved from an extended discussion of the subjects of accretion, of universal legacies and legacies under a universal title and from an examination of the refinements which such a discussion would require by the view which we have taken of the will.

We will not be called upon to say what would have been the proper construction of that instrument and the consequences of that construction had the testator declared that "he gave and bequeathed" (after the special legacies therein contained) to nine designated nephews and nieces "severally and proportionally any money or aught of value which should accrue to my estate from any claim exhibited in the papers which I leave, or otherwise," and to decide whether the terms "I give and bequeath severally and proportionally" to these nine persons would have to be taken as meaning "I give and bequeath IN SEVERALTY *and proportionally* to them," or as meaning "I give and bequeath "SEPARATELY and proportionally to them," for it will be noticed that there is *no direct disposing* clause conveying the remainder of his estate over and above the special legacies, and that the reference in the will to that remainder is by way of *payment to* or *distribution,* and *not of bequest.*

The executors were appointed in the first part of the testament with seizin and directed "to *administer and apply* the same *as hereinafter written,*" and this direction is followed up in the latter portion by the words "I desire, should any money or aught of value accrue to my estate from any claim exhibited in the papers which I leave, or otherwise, that the same *be paid severally and proportionally* to the persons named and stated to whom I leave gold in cash"

Considered from the standpoint of an "*order to pay*" (and that is the only way in which we are authorized to consider it), we think the will is clear and unmistakable as to its meaning. The words "pay severally and proportionally" obviously mean "*separately* and proportionally"—in other words, that each one is to be PAID SEPARATELY one-ninth each.

The persons named are not forced heirs of the testator; their right to *receive* is strictly limited to what he directed should be turned over to them, and we think it clear that, when the will was written, the testator *intended that that limit should be one-ninth.*

Accretion is based upon the theory that the title to the thing bequeathed is conveyed *in its entirety to each and every one of the legatees named,* and that hence when one or more of these legatees happen

to die before the legacy vests, this fact leaves *the title intact in each of the survivors as to its entirety, but with simply fewer persons to share in it on partition.*

Marcadé in his work " Des Donations et Testaments," *under Art. 1045* of the Code Napoleon, refers to the word *accretion* as wanting in exactness.

He says:

" On a vu au titre précédent que *l'accroissement* (dont le nom est peu exact puisqu'il est plutôt un *non décroissement*) est le droit de prendre dans une succession on dans un legs une part à laquelle on est appelé mais qu'on n'aurait pas eue si tous les co-intéressés étaient venus recueillir; il est établi pour l'héritier ou le légataire—non pas, disait Cujas—*ut plus habeat*, mais bien *ne minus habeat.* Il est clair, en effet, que le prédécès d'un co-héritier ou d'un co-légataire ne peut pas *créer pour ses co-intéressés* un droit *qu'ils n'auraient pas eu primitivement; que pour recueillir le tout il faut avoir vocation à ce tout,* vocation qui n'aurait pas son entier effet si tous les appelés recueillaient *quia concursus partes fierint.*"

In the case at bar the title to the remainder never vested at all in the nine persons or any of them, and therefore there is no room for the application of the principle of accretion.

The six survivors of the nine named will each receive exactly that which it was *originally intended* that each should receive—they neither lose or gain by the death of the three others.

If the testator did not alter his will after the death of the legatees it must be presumed it was because he knew the direction the lapsed legacies would take under the law.

On the subject of accretion see Dalloz " Les Codes Annotés," under *Art. 1044, C. N.,* No. 39:

" La seule difficulté est de savoir quand il y a assignation de parts suivant une opinion, il y a assignation de parts non seulement quand le testateur a distinctement déterminé la portion qu'il donne à chacun, cas qui n'a jamais fait difficulté et que le législateur n'avait pas besoin de régler, mais encore dans le cas où le testateur après avoir légué à plusieurs personnes la même chose ajoute que c'est *par portions viriles* ou par égales parts et portions." Jurisprudence Générale, Entre-vifs 4410.

We have already said that there was no disposing clause at all in the will now under consideration in reference to the remainder.

The claim of the opponents that no portion of the gold left over and above $6000 falls under the operation of the will is not well founded.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby avoided and reversed, and that the six survivors of the nine special legatees to each of whom $1000 in gold was bequeathed be limited each to take, under the will of the testator, the said special legacies of $1000 and each one-ninth of the remainder of the estate after the payment of the other legacies, debts, charges and costs, and that the gold found in the succession over and above the $6000 of the special legacies be included in the mass in making up the ninth to which each of the said survivors is entitled. It is further ordered, adjudged and decreed that all the portion of the succession remaining undisposed of, including therein the amount of the lapsed legacies, has devolved upon the legal heirs, subject to the payment of the debts, charges and costs. It is further ordered that this case be remanded to the District Court with orders to the executors to recast their account in accordance with the principles announced in this decree.