(116 So. 192)

No. 28573.

## SUCCESSION OF WILCOX.

Feb. 13, 1928. Dissenting Opinion March 12, 1928. Rehearing Denied March 12, 1928.

*(Syllabus by Editorial Staff.)*

1. Wills �köß775, 858(4)—If particular legatee dies before death of testator, legacy to him lapses and goes to universal legatee (Rev. Civ. Code, art. 1697).

Where a testator after bequeathing special legacies to particular legatees disposes of residue of estate by universal legacy, if particular legatee dies before death of testator, the legacy to him, which lapses under Rev. Civ. Code, § 1697, goes to universal legatee and not to testator's heirs.

2. Wills ⊦858(4)—Surviving universal legatees were entitled to benefit of two particular legacies which lapsed by legatees predeceasing testator (Rev. Civ. Code, art. 1697).

Where testatrix left particular legacies to a brother and to a nephew and disposed of the remainder of her estate by an universal legacy in favor of five heirs of a deceased sister, since legacies to the particular legatees lapsed under Rev. Civ. Code, art. 1697, where legatees did not survive testatrix, surviving universal legatees were entitled to benefit of lapsed legacies instead of testatrix's heirs.

3. Wills ⊦547—Bequest of remainder of estate to three nieces and two nephews, share and share alike, held "conjoint legacy," giving right of accretion (Rev. Civ. Code, arts. 1706–1709).

Where a testatrix bequeathed the remainder of her estate after payment of special legacies to three nieces and two nephews, share and share alike, legacy was "conjoint," within Rev. Civ. Code, arts. 1706–1708, and hence under article 1709, on death of one residuary legatee before testatrix, his interest passed by accretion to his surviving residuary legatees and not to heirs of testatrix.

4. Wills ⊦440—Court's function is to determine and carry out intention if it can be determined from language of will.

Court's only function is to determine and carry out the intention of the testatrix if it can be determined from the language of the will.

Overton, J., dissenting.

Appeal from Eleventh Judicial District Court, Parish of De Soto; Hal A. Burgess, Judge.

Proceeding in the succession of Blanche Wilcox, wherein the heirs of Thomas G. Williams claimed an interest as heirs of a residuary legatee. From an adverse ruling, the Williams heirs appeal. Judgment annulled, and account of the executor ordered amended so as to conform with opinion.

Lee & Williams, of Mansfield, for appellants.

S. M. Atkinson and Craig, Bolin & Magee, all of Mansfield, for appellees Yarbrough and others.

O'NIELL, C. J. Miss Blanche Wilcox died at her residence in De Soto parish, leaving no forced heirs, either ascendant or descendant. There are two groups or branches of collateral heirs. One of the groups is referred to as the Williams heirs, and is composed of a son and three daughters and a grandson—the grandson being the only heir and representative of a deceased son—of the deceased Mary Jane Wilcox Williams, who was a sister of Miss Blanche Wilcox. The other

group of heirs is referred to as the Wilcox heirs, and is composed of four sons and two daughters of the deceased M. L. Wilcox, who was a brother of Miss Blanche Wilcox. The Williams heirs are Thomas G. Williams, the son, Mrs. Blanche Edge, Mrs. Margaret Burnet and Mrs. Mary Jane Russell, the daughters, and Louis Bryant Williams, the grandson, of the deceased Mary Jane Williams, sister of Miss Blanche Wilcox. The Wilcox heirs are Jim Wilcox, Louis B. Wilcox, M. L. Wilcox, Jr., and W. Arthur Wilcox, the sons, and Mrs. Ada Hall and Mrs. Annie Mae Yarbrough, the daughters of the deceased M. L. Wilcox, brother of Miss Blanche Wilcox. She left a will, dated May 30, 1924. At that time M. L. Wilcox, father of the so-called Wilcox heirs, was living, and so was Willis W. Williams, another grandson of the deceased Mary Jane Wilcox Williams, and brother of Louis Bryant Williams.

In her will Miss Blanche Wilcox left several special or particular legacies to her nieces and nephews, among which legacies was a legacy of $1,000 to her brother, M. L. Wilcox, who died after the will was made and before the death of the testatrix, and a legacy of $1,000 to Willis W. Williams, who also died after the will was made and before the death of the testatrix. She disposed of the residue of her estate by an universal legacy in favor of five of the Williams heirs, including Willis W. Williams, thus:

"The remainder of my estate, after the payment of the special legacies hereinabove provided for, I will and bequeath unto my nieces, Blanche Edge, born Williams, wife of J. M. Edge, Margaret Burnet, born Williams, wife of Joe H. Burnet, Mary Jane Russell, born Williams, wife of Wright Russell, and to my nephews, Thomas G. Williams and Willis W. Williams, share and share alike."

The two special legacies of $1,000 each, in favor of M. L. Wilcox and Willis W. Williams, and the residuary legacy in favor of Willis W. Williams as one of the five universal legatees, were without effect, because, as we have said, these two legatees did not survive the testatrix.

"The testamentary disposition becomes without effect, if the person instituted or the legatee does not survive the testator." Rev. Civ. Code, art. 1697.

The question is, What shall be done with the two lapsed legacies of $1,000 each, and the share in the residuary legacy, which would have gone to Willis W. Williams if he had survived the testatrix? Shall the sum of these legacies inure to the benefit of the remaining four residuary legatees, or should it be divided among the heirs at law of the testatrix, as if it were not disposed of by the will?

The executor filed an account in which, after paying the debts of the succession and the special or particular legacies (all but the two which had lapsed by the death of the legatees), it was proposed to treat the $2,000 represented by the two lapsed special or particular legacies as being disposed of by the residuary legacy and to treat that part of the residuary legacy which would have gone to Willis W. Williams if he had survived the testatrix as belonging, not to the four remaining residuary legatees, but to the heirs at law of the testatrix, as if the fifth share, which would have gone to Willis W. Williams if he had survived, had not been disposed of by the will. The Wilcox heirs opposed the proposition of the executor to treat the two lapsed special legacies of $1,000 as being disposed of by the residuary legacy in favor of the Williams heirs, but approved of the proposition of the executor to divide among the heirs of the testatrix the fifth of the residue of the estate—which fifth would have gone to Willis W. Williams if he had survived the testatrix. In other words, the Wilcox heirs contend that a fifth of the residue of the estate—the fifth which would have gone to Willis W. Williams if he had survived the

testatrix—as well as the $2,000 represented by the two lapsed special legacies, should be divided among the heirs at law of the testatrix, as being undisposed of by the will. The four remaining residuary legatees, who are four of the five Williams heirs, approved of the proposition of the executor to treat the $2,000 represented by the two lapsed special legacies as being included in the residuary legacy, but opposed the proposition of the executor to divide a fifth of the residue of the estate—the fifth which would have gone to Willis W. Williams if he had survived the testatrix—among the heirs at law of the testatrix, instead of dividing the whole residue of the estate among the remaining four residuary legatees. They insist that the whole residue of the estate, as augmented by the lapsing of the two special legacies of $1,000 each, should be divided equally among them, the four remaining residuary legatees.

The district court rejected the opposition of the residuary legatees, and gave judgment in favor of the Wilcox heirs, ordering the executor to divide among the heirs at law of the testatrix the $2,000 represented by the two lapsed special legacies, and divide also among the heirs at law of the testatrix the fifth of the residuary legacy—the fifth which would have gone to Willis W. Williams if he had survived the testatrix. The Williams heirs, as residuary legatees, have appealed from the decision.

[1] The case presents no difficulty with regard to the disposition which should be made of the $2,000 represented by the two lapsed special legacies. It is well settled that, where a testator, after bequeathing special legacies to particular legatees, disposes of the residue of his estate by an universal legacy, if a particular legatee dies before the death of the testator, the legacy to him, which thereby lapses, goes to the universal legatee or legatees, and not to the heirs of the testator. Prevost v. Martel, 10 Rob. 513; Suc-

cession of Foucher, 18 La. Ann. 409; Heirs of Hoover v. York & Hoover, 24 La. Ann. 375; Succession of Dupuy, 33 La. Ann. 277; Succession of Burnside, 35 La. Ann. 708; City of New Orleans v. Hardie, 43 La. Ann. 251, 9 So. 12; Succession of Herber, 117 La. 239, 41 So. 559.

"Consequently, where a testator, dying without legitimate descendants, but leaving several brothers and sisters, institutes one of them his universal heir, such universal heir or legatee will be entitled to the benefit resulting from the failure or reduction of the particular legacies, to the exclusion of the other brothers and sisters." Prevost v. Martel, 10 Rob. 513.

"Particular legacies which have lapsed by the death of the legatee before the testator, or from other inability of the legatee to take them, fall into the residuum, and go to the universal legatee and not to the heir." Succession of Burnside, 35 La. Ann. 708.

[2] The judgment appealed from is therefore wrong in so far as it gives the heirs of the testatrix, instead of giving the universal legatees, the benefit of the lapsing of the two particular lgacies of $1,000 each. In that respect the account of the executor—and the proposed distribution of the estate—was correct.

[3] The judgment appealed from is wrong also in so far as it maintains that the universal or residuary legacy was not a conjoint legacy and that the heirs at law, instead of the four remaining residuary legatees, should take the fifth of the residue of the estate because the testamentary disposition in favor of Willis W. Williams was without effect, in consequence of his dying before the death of the testatrix.

It is argued on behalf of the appellees that the universal or residuary legacy was not a conjoint legacy, but a legacy of one-fifth of the residue of the estate to each of the five legatees named, because of the expression in the will, "share and share alike." It is said that the meaning and effect of the expression "share and share alike" is the same

as if the testatrix had given, in terms, to each one of the five legatees named, separately, one-fifth of the residue of her estate. Our opinion, to the contrary, is that the expression "share and share alike" had no particular reference to the number of the residuary legatees, or to the fractional part which each should receive of the residue of the estate, but meant merely that the residue of the estate should be divided equally among the residuary legatees, without regard for the number of them.

[4] Our only function is to .determine and carry out the intention of the testatrix, if it can be determined from the language of the will; and, with that in mind, it seems unreasonable to suppose that the testatrix intended, in giving the residue of her estate to the five named universal legatees with the direction that they should "share and share alike," but without even mentioning the number of them, that, if one of them should die, the remaining four should take only fourfifths of the residue of the estate. The presumption that the testatrix did not intend that any part of her estate should remain undisposed of by her will arises from the fact itself that, after giving the several special legacies to the particular legatees named, she disposed of the entire residue of her estate. The provisions of the Civil Code on the subject are as follows:

"Art. 1706. The right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles.

"Art. 1707. Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several *conjointly*.

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [meaning *each*] colegatee in the thing bequeathed.

"Art. 1708. It shall also be reputed to be made conjointly when a thing not susceptible of being divided without deterioration, has been given by the same act to several persons, even separately.

"Art. 1709. Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs."

The expression in the second paragraph of article 1707, "without the testator's having assigned the part of such colegatee," means without the testator's having assigned the part of *each* colegatee. In the French text of the corresponding article—1700—of the Code of 1825, the words which have been translated erroneously into "the part of such colegatee" are "la part de chacun des colégataires"—meaning, literally, "the part of each one of the colegatees." In the case before us, therefore, the residuary legacy was intended to be a conjoint legacy, because, as article 1707 of the Code provides, it was made by one and the same disposition, without the testator's having assigned the part or share of each one of the colegatees.

In the case of Parkinson v. McDonough, 4. Mart. (N. S.) 246, a legacy under an universal title given to four legatees, in the following words, was held to be a conjoint legacy, of which, one of the four legatees having died, the three survivors took his share by accretion, viz.:

"I will and bequeath to the orphan children of my old friend Godfrey Duher, and which are now under my charge, and are named Mary, Nancy, James, and Eliza, one share, or oneeighth part of all my property, to be equally divided among them."

Surely, there is no difference in the meaning between "to be equally divided among them" and "share and share alike."

In Lebeau v. Trudeau, 10 La. Ann. 164, a legacy to eight legatees, written in French, was translated as follows:

"After my debts are paid, my property shall be divided, in equal portions, among the persons hereinafter named, that is to say, Lesine Le-

beau, Polixene Bertrand, John Demouruelle, Emma Bertrand, Jean Bertrand, Elizabeth Wilson, Laure Grousard, L. H. Trudeau."

The heirs at law of the testator claimed an eighth of the legacy because one of the legatees, Elizabeth Wilson, was incapable of receiving; but the court held that the legacy was conjoint, and that the seven other legatees took by accretion the share that was intended for Elizabeth Wilson.

In Mackie v. Story, 3 Otto (93 U. S.) 589, 23 L. Ed. 986, which was a Louisiana case, a legacy which read, "I will and bequeath to Henry C. Story and Benjamin S. Story all properties I die possessed of, to be divided equally between them," was held to be a conjoint legacy. The legatees were brothers of the deceased and one of them, Henry C., died before the death of the testator. The children of Henry C. Story claimed his half of the legacy, but the court held that it belonged to the colegatee, Benjamin S. Story, by right of accretion. The court said:

"The court below decided that the legacy was a conjoint one, and that by the right of accretion the whole of it accrued to Benjamin; and in this opinion we concur. The civil law does not recognize the common-law distinction between joint tenancy and tenancy in common. A gift to two persons jointly, if it takes effect, inures to their equal benefit without any right of survivorship. If one dies, his share goes to his legal representative. Hence the words 'to be divided equally between them' added to such a legacy only expresses what the law would imply without them. They do not alter the character of the legacy; they are only descriptive of it. At the common law, they would have the effect of making it a tenancy in common; but they have no such effect in the civil law. The legacy, if it takes effect in respect of both legatees, will be divisible equally between them in any event.

"But in testamentary dispositions, the civil law does make a distinction between a conjoint legacy and a legacy of separate and distinct shares in the thing bequeathed. Where the whole thing bequeathed is given to two persons, if one of them fails to receive the benefit of the disposition, either because he dies before the testator, or is incapable to take it, or refuses to take it, or because as to him it is revoked, the whole goes to the other legatee by accretion; for the whole was given to both, and it is presumed to be the will of the testator that he shall not die intestate as to any part, but that the whole shall pass by his will; and this, notwithstanding it may be divisible between the two legatees, if received by both. But where an aliquot part is bequeathed to one, and another aliquot part to another, then they are separate legacies, and that part which is bequeathed to one is not bequeathed to the other; as, if the testator should say, 'I give one-half of my bank stock to each of my two sons,' or, 'I give my bank stock to my two sons, one-half to each.' Here there is an assignment of parts by the testator himself; and the legacies are separate, and not conjoint.

"The distinction between these forms of expression and that in the will under consideration may seem somewhat nice; but it is not more so than that which prevails in the English law between a condition annexed to the gift and one annexed to the payment or delivery of the thing given. Thus, a bequest of $100 to A when he attains twenty-one years is a conditional gift, and fails if A died before twenty-one. But a bequest to A of $100, to be paid to him when he attains that age, is an absolute gift, and does not fail though he dies before, the condition being annexed only to the payment."

The appellees cite and rely upon the rulings in the following cases: Compton v. Prescott, 12 Rob. 56; Succession of Dougart, 30 La. Ann. 268; Succession of Hunter, 45 La. Ann. 262, 12 So. 312; and Succession of Schonekas, 155 La. 401, 99 So. 345.

In Compton v. Prescott, the residuary legacy to four nieces of the testator was held to be not a conjoint legacy, because the testator declared plainly that he gave one-fourth of the estate to each one of the legatees, viz.:

"To be equally divided between them, that is to say: One-fourth to Amelia, one-fourth to Mary Celeste, one-fourth to Eleanor, and one-fourth to Sarah Jane."

That, of course, was not a conjoint legacy, according to the definition given in the second paragraph of article 1707 of the Civil Code.

In the Succession of Dougart, the testator gave a third of his estate to his mother and the usufruct "of all the balance" of his property to his wife during her life, and the ownership thereof to his sister. The mother died before the death of the testator, and, at his death, the widow claimed the usufruct of the whole estate. The claim was not by a colegatee claiming by right of accretion. The ruling was that the widow of the testator did not have the usufruct of the third of the estate, which third would have gone to the testator's mother if she had survived him. The decision is not appropriate to this case.

In the Succession of Hunter, the executors proposed to apply the doctrine of accretion to several special or particular legatees, some of whom had died. Of course, there was no right of accretion in favor of the survivors of the several special or particular legatees of specified sums of money. There was a clause in the will directing the executors to pay severally and proportionately to the persons named as particular legatees any money or thing of value accruing to the estate from any claims exhibited in the papers left by the testator, or otherwise; but, with regard to that disposition, the court held that there was no disposing clause in favor of the special or particular legatees, hence no right to take by accretion the special legacies of sums of money given to the legatees who died before the death of the testator.

The decision rendered in the Succession of Schonekas is not so easily distinguished from the decision which we have arrived at in this case. In the Succession of Schonekas, the legacy which was held to be not a conjoint legacy was in favor of the testator's two daughters, viz.:

"In the event of my death, I give and bequeath unto my daughter Delia Schonekas, * * * and Lillie Schoenekas, * * * share and share alike, the disposable portion of my estate; that is so much, as the law will allow me to give them, in addition to what they are entitled to as my children and heirs."

The reason given for the ruling that the expression "share and share alike" prevented the legacy from being a conjoint legacy was that the expression "share and share alike" preceded the legacy itself, or the subject of the bequest; i. e., the disposable portion of the estate. It was conceded, in the opinion rendered in the case, that, if the expression "share and share alike" had been written after "the disposable portion of my estate," the expression "share and share alike" would have formed no part of the disposing clause, but would have been tantamount to "in equal proportions," and the legacy would have been a conjoint legacy. Whether that distinction would be recognized by the court as now constituted is a question which we need not decide. The decision in which the distinction was recognized was by a division composed of only three members of the court, and there was no application for a rehearing in the case; hence no opportunity for a majority of the members of the court to express their opinion on or to consider the question.

Our conclusion is that the residuary legacy in controversy in this case was intended to be a conjoint legacy, and that the four surviving residuary legatees are entitled by right of accretion to the whole of the residue of the estate, as augmented by the lapsing of the two special legacies of $1,000 by the death of the two particular legatees before the death of the testatrix.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the account of the executor be amended so as to conform with the views herein expressed, and that the four surviving residuary legatees of the deceased, Miss Blanche Wilcox, are entitled to receive and to share equally the whole of the residue of her estate, as augmented by the lapsing of the two special legacies of $1,000 each by the death of the two particular legatees before the death of the testatrix. The costs of this proceeding are to be borne by the succession.

OVERTON, J., dissents, and adheres to the ruling made in Succession of Schonekas, 155 La. 401, 99 So. 345.

OVERTON, J. The opinion of the majority holds that:

"The judgment appealed from is wrong also in so far as it maintains that the universal or residuary legacy was not a conjoint legacy and that the heirs at law, instead of the four remaining residuary legatees, should take the fifth of the residue of the estate because the testamentary disposition in favor of Willis W. Williams was without effect, in consequence of his dying before the death of the testatrix."

The reason for holding that the four remaining residuary legatees are entitled to the whole of the residuary legacy, and that the share therein that would have fallen to Willis W. Williams, had he survived the testatrix, does not fall to the legal heirs of the latter, is because the legacy is conjoint, and therefore Williams' part falls to his colegatees by accretion.

The right of accretion is in the nature of an exception to a general rule, for article 1706 of the Civil Code provides that:

"The right of accretion, relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles."

From this it would seem that the right does not exist unless it comes clearly within one of the exceptions referred to in the article quoted. See, also, C. C. art. 1709. One of these execptions is provided by article 1708, and relates to cases where the thing bequeathed is not susceptible of being divided without deterioration. That exception is not pertinent here, and there is no contention that it is. However, the exception provided by article 1707, which is the remaining exception, is pertinent, and the phase of the case under consideration must be decided according to the article setting it forth. The article, which sets that exception forth, reads as follows:

"Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several *conjointly*.

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [meaning each] colegatee in the thing bequeathed."

From the foregoing it is clear that, where the testator has willed a thing to several, *without* assigning the part of each legatee in the thing bequeathed, the legacy is conjoint, for then each legatee is called to *the whole legacy*, and therefore, if one of them should die before the testator, as each legatee is called to the whole legacy, the remaining legatees take the entire legacy, to the exclusion of the legal heirs of the testator, as if they alone had been named as the legatees, but where the testator assigns to each legatee a part in the thing bequeathed, then the legacy is nonconjoint, and should one of the legatees die before the testator, the part assigned to him, in the absence of any contrary provision in the will, falls to the legal heirs of the testator, for in such instance, each legatee is not called to the whole of the thing bequeathed, but only to the part assigned to him. Therefore, in order to determine whether, in any given instance, accretion takes place, the thing bequeathed being divisible in kind, it is necessary to determine whether each legatee was called to the whole of the thing bequeathed or only to a part thereof. Marcadé made a similar observation in commenting on article 1044 of the Code Napoleon, which is similar to our article 1707, when he said:

"Therefore, in order to know if there is room for accretion to the profit of the survivor (or successor) it is necessary to consider whether the survivor has been called to the whole." Marcadé, vol. 4, pp. 144, 145, quoted in Succession of Dougart, 30 La. Ann. 268, 271.

The legacy, under consideration herein, reads as follows:

SUCCESSION OF WILCOX

"The remainder of my estate, after the payment of the special legacies hereinabove provided for, I will and bequeath unto my nieces, Blanche Edge, born Williams, wife of J. M. Edge, Margaret Burnet, born Williams, wife of Joe H. Burnet, Mary Jane Russell, born Williams, wife of Wright Russell, and to my nephews Thomas G. Williams and Willis W. Williams, share and share alike."

By the foregoing disposition it will be observed that the testatrix willed and bequeathed the remainder of her estate to five legatees, share and share alike. It is the purpose of this opinion to show that she did not by that disposition call each legatee to the whole of the residue, but only to a fifth thereof, as much so as if she had bequeathed in so many words one-fifth of it to Blanche Edge, one-fifth to Margaret Burnet, and so on until each of the five legatees had been left a one-fifth of the residue, and that this construction is supported by authority, and that, such being the correct construction, the legacy is not a conjoint one.

Dalloz, in commenting on article 1044 of the Code Napoleon, in "Les Codes Annotés," under that article, No. 39, says:

"Following an opinion, there is an assignation of parts not only when the testator has distinctly determined the portion which he gives to each, a case which never has any difficulty, and which the Legislature has no concern to regulate, but also, in the case where the testator, after having bequeathed to several persons the same thing, adds that it is bequeathed by virile portions or by *equal parts*. [Italics mine.] Jurisprudence Générale, Entre Vifs, 4410" (quoted approvingly in Succession of Hunter, 45 La. Ann. 262, 267, 12 So. 312).

It will be recalled that in the disposition under consideration the bequest is to five legatees, share and share alike. This, it will be observed, is a bequest in equal parts or portions, which according to the quotation from Dalloz shows an assignation of parts, in bequeathing *the thing, which we may add*, as a necessary deduction from the French Code and from our own, makes the legacy nonconjoint.

Toullier, in his work, Droit Civil Francais, vol. 5, Nos. 690 and 691, recognizes in effect what is said by Dalloz, concerning a bequeathing in equal parts or portions, and further draws the distinction between the making of a bequest to several legatees in equal parts and the making of one to several legatees, to be divided by them in equal parts. He says:

"But this right [the right of accretion] ceases if the testator, in uniting the legatees in one and the same disposition, assigns to each of them what is given him in the thing bequeathed. They are then called conjoint by words only, conjuncti verbis tantum. * * *

"Nevertheless, it must be distinguished whether the assignation of parts is found in the disposition itself, or solely in the manner of its execution. In the example, here given, 'I give to Peter, Paul, and John the Cornelian estate *in equal portions*,' the distinction and assignation of parts is in the disposition itself; they make a part, they are inseparable; thus, in principle, each one has the right only to that portion which is especially assigned to him. (Italics mine.)

"On the contrary, if it is said 'I give to Peter, Paul, and John the Cornelian estate, [for] to be divided between them in equal portions,' they remain conjoint re et verbis in the first member of the phrase, which contains the disposition and which includes, in principle, the destination of the totality in favor of each of the legatees. They have no parts assigned to them save in the second member, which is an accessory phrase united to the first by conjunction (pour) 'for,' and is attached to determine the manner of executing the disposition, without otherwise destroying the rights given in the first member to the legatees through which they have, nevertheless, the right of accretion of the parts which become caducous."

Baudry-Lacantinerie is to the same effect as Dalloz and Toullier. See Baudry-Lacantinerie des Donations et des Testaments, vol. 2, p. 431, No. 2906.

In Parkinson v. McDonough, 4 Mart. (N. S.) 246, the distinction between bequeathing a thing to several in equal parts, and bequeathing it to them, to be divided among them in equal parts, is recognized, and the decision in that case, rendered in 1826, rests

largely upon that distinction, and Toullier, from whom we have freely quoted, is cited in support of the distinction. The legacy in that case, according to the rules quoted above, unlike the legacy in the present case, was conjoint, but the principle which should be applied in this case as a part of our jurisprudence was there recognized. In fact, if that principle be taken out of the case cited, the case loses much of the reasoning upon which it is based. In the case cited, the will read:

"I will and bequeath to the orphan children of my old friend Godfrey Duher, and which are now under my charge, and are named Mary, Nancy, James, and Eliza, one share, or one-eighth part of all my property, *to be equally divided* among them. * * * " (Italics mine.)

The court was impressed with the fact, from the surrounding circumstances, that the testator intended the legacy to be conjoint. On the other hand, the court, in commenting on the phraseology of the will, recognized that the construction that would be most readily given to it would be that there was an assigning of parts in the thing bequeathed, which would make the legacy nonconjoint. The court, after calling attention to the contention of the appellants which invoked the rule stated by Toullier for determining whether a legacy is conjoint, said:

"The distinction between a bequest of a thing to many in *equal portions;* and one wherein a testator gives a legacy to two or more individuals, *to be divided in equal portions,* appears at first view extremely subtle and refined. The difference of phraseology in those two modes of bequeathing is so slight as not readily to convey to the mind any difference in ideas, and can only produce this effect by separating the members of the sentence in the latter phrase; in truth to create two distinct sentences, each complete in itself with regard to sense and meaning; the one relating to the disposition of the will, the other to its execution. We might hesitate much in adopting this method of construction, were it not sanctioned by the authorities cited in behalf of the appellants; the doctrine contended for is fully supported by the Commentary of Toullier on the 1044th article of Code Napoleon, which we have already shown to be precisely similar to that of our own Code."

The opinion in the case cited was rendered over a century ago. Therefore, the rule stated by Toullier for the construing of such dispositions was incorporated in our jurisprudence over a hundred years ago. So far as my knowledge extends, no ruling has been made by this court in conflict with it, until the opinion in the present case was handed down. In the majority opinion in the present case that case—that is the Parkinson Case—is cited; the disposition of the will that was under consideration there is quoted, and then, without further comment on the case, it is said: "Surely, there is no difference in the meaning between 'to be equally divided among them' [which was the expression used in the will in the Parkinson Case] and 'share and share alike'" (which is the expression used in the present case); the majority of the court thereby meaning that there is no difference between a disposition in a will reading "I will and bequeath certain property to certain legatees, to be equally divided among them," and "I will and bequeath certain property to certain legatees share and share alike." I most respectfully submit that the very decision, cited by the majority, shows that there is a difference, and makes use of the distinction in order to reach a conclusion in the case.

The case of Mackie v. Story, 93 U. S. 589, 23 L. Ed. 986, is substantially to the same effect as the Parkinson Case, and is in accord with it.

The Succession of Schonekas, 155 La. 401, 99 So. 345, is so similar to the present case that it is said in the majority opinion that it is not easily distinguishable from it. In my opinion the two cases cannot be distinguished. In the Schonekas Case the disposition in the will was:

"I give and bequeath unto my daughters, Delia Schonekas, wife of C. B. Kern, and Lillie Schonekas, divorced wife of Herman Roos, share and share alike, the disposable portion of my estate; that is so much, as the law will allow me to give to them in addition to what they are entitled to as my children."

The legacy here was held to be nonconjoint, because the bequeathing, share and share alike to the legatees, of the property affected the disposition of the property, and was therefore principal and dispositive, and not accessorial and regulation, or in other words, because the willing of the property to the legatees, who numbered two, was a willing of one half of it to one and a willing of the remaining half to the other, and not a calling of each legatee to the whole legacy. I submit that the decision is correct and well supported by authority. I may here add that the majority are incorrect in saying that the opinion conceded that, had the expression "share and share alike" been placed elsewhere in the will in that case, it would have made the legacy conjoint. The majority evidently have reference to a concession on page 412 of 155 La. (99 So. 349), which volume contains a report of the case. The concession there made, however, far from sustains the construction placed upon it.

In closing I submit that a disposition in a will, bequeathing to several legatees certain property, share and share alike, is a bequeathing to each, in equal portions, a part of the property, as much so as if the testator had willed, say, one-fifth to one, one-fifth to another, and so on until all the legatees received an equal part. In other words, the expression used in the foregoing example and in the will is a dividing of the thing into parts by the testator, and the calling of each legatee to his part, and not each to the whole of the thing bequeathed. The legacy is therefore not conjoint.

For the foregoing reasons, I dissent from the decree handed down by the majority.

On Application for Rehearing.

PER CURIAM. Rehearing denied.

OVERTON, LAND, and ROGERS, dissent from refusal to grant a rehearing.

ST. PAUL, J. I concur in the refusal to grant a rehearing herein because the following passage from Duranton, book 3, art. 507 (cited with approval in the majority opinion of this court in Succession of Villa, 132 La. 714, 61 So. 765), expresses exactly and clearly my own understanding of the meaning of article 1707 of the Revised Civil Code of 1870 (article 1044 of the Code Napoleon), to wit:

"The assignment of equal aliquot parts to each of the legatees [created by one and the same disposition], as the half, the third, etc., works a division of the disposition, and makes as many legacies as there are assigned parts; but *the mere declaration of equality of rights* in the thing bequeathed acts only on the division, and not on the thing itself. [Italics mine.]"

I am therefore now convinced that I erred in yielding my assent to the conclusion reached in Succession of Schonekas, 155 La. 401, 99 So. 345.

This quotation escaped my attention at the time.