No. 6674.

SUCCESSION OF BAPTISTE DOUGART.     OPPOSITION TO THE ACCOUNT OF THE
EXECUTRIX.

The question whether an executrix has been legally appointed can not be raised collaterally, on an opposition to her account. It can only be considered in a direct action to revoke.

A general denial, in an opposition to the account of an executrix, puts at issue each and every item in the account, and puts on her the *onus* of proving each item.

The lapse of a legacy, caused by the legatee's death before that of the testator, will not give to the universal usufructuary created by the will, the usufruct of the property embraced in the lapsed legacy. Such property will fall to the legal heirs of the testator, if not otherwise specially disposed of in the will.

Accretion only takes place in favor of legatees, in cases where a legacy has been left to "several conjointly;" as specially provided for in articles 1707, and 1708 of the Civil Code.

A mere right of usufruct, no matter how general the usufruct, will not constitute the usufructuary a universal legatee, or even a legatee under a universal title; but only a legatee by a particular title.

It is only when a legatee by a particular title is charged with the payment of a special legacy, that he can profit by the lapse of the legacy.

When the property of a legacy left by a deceased husband devolves on his legal heirs, on account of a lapse of the legacy, his widow will be entitled to the usufruct of the property, and hence not liable for its revenues.

The usufructuary may at any moment renounce his usufruct.

Prescription does not begin to run against the claims of the usufructuary, on account of debts paid by him for which the property subject to the usufruct was liable, until the expiration of the usufruct.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*Buck & Dinkelspiel* for opponent and appellant.

*Hornor & Benedict* and *F. W. Baker* for executrix.

The opinion of the court was delivered by SPENCER, J., on the original hearing, and on the rehearing by EGAN, J.

SPENCER, J. Baptiste Dougart died June 7, 1868, leaving an estate in community with his wife, Elizabeth Bishop. He died without ascendants or descendants. He left a will by public act of date February 25, 1864, whereby he appointed "Theophile Gollain, and in case of his death my wife, the said Elizabeth Bishop, to be the executrix of this my last will, with full seizin, etc."

This will contains the following clauses :

"I give and bequeath unto Mrs. Catherine Fairbac, widow of the late Jacob Dougart, my mother, one third of the property of which I may die possessed, *such third being the portion reserved to her by law.*"

"I give and bequeath unto my wife, the said Elizabeth Bishop, the usufruct during her natural life of all the balance of *the property of which I may die possessed,* and at her death I give and bequeath the

whole of said property to the children of Catherine Dougart, the wife of Michael Burgard, my sister, residing in this city."

The mother, Mrs. Fairbac, as we have said, died some two years before the testator. The legacy to her thereby became caducious and without effect. R. C. C. 1697. Gollain qualified immediately after the testator's death as executor, and seems to have so continued till his own death, on July 12, 1876, without ever having rendered any account of his administration. The Widow Dougart, now wife of Edouard Lischey, thereupon applied to be appointed testamentary executrix, which the court granted, and she taking the oath and receiving letters as such. The executrix thereupon rendered an account of the debts of the estate, and prayed that after citation to the heirs and legatees the same be homologated and approved.

Her account consists of a statement of the debts due by the deceased at his death, his funeral expenses, expenses of last illness, attorneys' fees, and court costs, etc. She claims in substance, that being usufructuary of the entire property, she procured and advanced the money necessary to pay these debts and charges, and that the estate is therefore bound to her by way of re-imbursement of all said sums, to which she was legally subrogated, etc.

The heirs and legatees file opposition to the account, and allege in substance —

First—That the executrix was illegally appointed, that the will contemplated her appointment only in the event Gollain should die before the testator; that her appointment entailed useless expenses and was unnecessary, as the account showed upon its face that the debts of the estate had all been paid, etc.; that therefore her appointment should be annulled, and her account rejected.

Second—They oppose and deny each item of the account, as not being debts due by the deceased or his estate.

Third—They allege that the legacy of one third of the estate to the mother having lapsed by her predecease, the widow had no right of usufruct thereon; and that as she has had the possession and enjoyment of the entire property since her husband's death she must account for the fruits and revenues of the third so bequeathed to the mother.

Fourth—They allege that the executrix and usufructuary is seeking to renounce the usufruct, in order to enforce said debts against the estate and sacrifice its property. They deny her right to do so.

Fifth—They plead the prescriptions of one, three, five, and ten years against each item of the account.

We will consider these various grounds of opposition in their order.

First—As to illegality of the appointment of the executrix, it is only necessary to say that that question can not be raised in this indirect and

collateral way.   Whether legally or illegally done, she was appointed and qualified, and must be treated as the lawful executrix until her appointment is revoked in a direct action.

Second — The denial of each item of the account was certainly equivalent to a general denial of its correctness.   The accountant in this case occupies the status of plaintiff, and a general denial was sufficient to put her to the proof of the correctness of her account.   Even when no opposition is filed, we hold it to be necessary to the homologation, that *prima facie* proof of the correctness of the account must be produced.   In this case we have carefully examined the evidence, and we agree with the judge *a quo* that it fully establishes the correctness of the whole account, and shows that the debts specified were truly those of the deceased or of his estate.

Third—The question as to the effect of the lapsing or caducity of the legacy to the mother of one third of the testator's estate, has been extensively discussed.   On the part of the executrix it is claimed that the terms of the will make her universal legatee of the usufruct, or legatee by universal title thereof ; that it was the evident intention of the testator to bequeath her the usufruct of all the property of the estate of which he had by law the disposal ; that therefore she profited by the caducity of said bequest, to the extent of the usufruct of the property embraced therein, and that the clause in her favor should now be read as follows :

"I give and bequeath unto my wife, the said Elizabeth Bishop, the usufruct, during her natural life of all   *    *    *    the property of which I may die possessed, and at her death I give and bequeath the whole of said property to the children of Catherine Burgard," etc.

The effect of this argument is to claim either that *accretion* took place in her favor, or that the legacy in her favor was *charged* with the payment of this legacy to the mother.   One or the other of these hypotheses must be the basis of the widow's pretension, if she asserts it under the will.   We can not assent to either proposition.

In the first place Art. 1706 C. C. declares :   "The right of accretion relative to testamentary dispositions shall no longer subsist, except in the cases provided for in the two following articles."

Art. 1707 C. C.   "Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several *conjointly.*   The legacy shall be reputed to be made conjointly when it is made by one and the same disposition, without the testator's having assigned the part of such co-legatee in the thing bequeathed."

Art. 1708 C. C.   "It shall also be reputed to be made conjointly, when a thing not susceptible of being divided without deterioration has been given by the same act to several persons, even separately."

Art. 1709 C. C. " Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it either to a legatee or to an instituted heir, or because the heir or the legatee has not been able or willing to accept it, shall devolve upon the legitimate heirs."

The right of accretion rests upon the *expressed* or "*reputed*" intention of the testator to call each legatee to *the whole* of one and the same thing. "L'accroissement est le droit de prendre, dans une succession ou dans un legs, une part à laquelle on est appelé, mais qu'on n'aurait pas eu si tous les co-intéressés étaient venus recueillir ; il est établi pour l'héritier ou le légataire, non pas, disait, *cujas ut plus habeat,* mais bien *ne minus habeat.* Il est clair, en effet, que le prédécès, l'incapacité, ou la répudiation d'un co-héritier ou d'un colégataire ne peut pas créer pour ses co-intéressés un droit qu'il n'auraient pas eu primitivement : que, pour recueillir *le tout* il faut avoir vocation a *ce tout,* vocation qui n'aurait pas son entier effet si tous les appelés recueilaient, *quia concursu partes fierent.*

" Donc, pour savoir s'il y a lieu a l'accroissement au profit d'un successeur, il faut regarder si ce successeur était appelé *ad totum.*" Marcade, v. 4 p. 144—5.

Among heirs *ab intestato,* accretion always takes place, for each heir is called to *the whole* succession. *Nemo pro parte haeres.* And the same would seem to be true as between *universal legatees,* since a universal legacy is the attribution, made by testament, of the right, at least eventual, to the universality of the goods of the testator—to the whole succession. But, be this as it may, it is clear that under the Code accretion can no longer take place in testamentary dispositions, except where the legatees are *conjointly* called to one and the same thing. And it is equally clear that even if made *conjointly* and by one and the same disposition or clause, accretion does not take place if the disposition contains an assignation of the parts of the respective legatees. Nor will accretion take place when a thing has been given by *separate* clauses of the same act to several persons, unless the thing be of a nature not susceptible of division without deterioration. Tested by these rules, it is manifest that the right of accretion does not exist in this case for the benefit of the widow ; first, because the legacies to the mother and to her are not conjoint ; second, because, if they were, there is an attribution of parts, "one third" to the mother, and "the balance" (two thirds) to the widow ; third, because they are made by *separate clauses* or dispositions and the usufruct is not indivisible without deterioration.

Nor is it true that the widow is by said will a "universal legatee," or even a legatee "by universal title."

In the nature of things the legatee of an usufruct, however general

it may be, can not be a *universal legatee*, because a universal legatee must be called "to the whole of the property which the testator leaves at his decease." C. C. 1606. Can one, whose title only calls for the usufruct of an estate, one only of the elements of its ownership, ever pretend to have vocation "to the whole of the property" left by the deceased? Nor is she any more a legatee by universal title. To be such she must be called either, first, to an aliquot part of the whole estate; or, second, to *all its* immovables; or, third, *to all* its movables; or, fourth, to an aliquot part *of all its movables* or *all its immovables.* C. C. 1612. By the terms of this will she falls under neither of these classes, and is, therefore, only a legatee by particular title. C. C. 1625.

True, we speak of a universal usufructuary or of one by universal title, and so does the Code, Art. 580, but this is only *a manner of speaking*, and does not constitute the legatee of the usufruct either a universal legatee, or a legatee by universal title. This is made more evident by the fact that universal legatees, and those by universal title, are liable for the debts of the succession. C. C. 1611, 1614; whereas the legatee of the usufruct, however general, is never liable therefor.

Nor do we think it can be fairly inferred from the testament that it was the intention of the testator to give his wife any more than he did give her. There was nothing to prevent his giving her the usufruct of his whole estate, if he had so wished. There was living at the date of the testament but one forced heir, his mother, to whom the law reserved only one third of his estate. Surely the naked ownership of the whole estate would have been more than the *légitime* of the mother amounted to; so that he could, if he had desired, have given the usufruct of the entire estate to his wife, without trenching upon the reserve of his mother. Besides, the fact that his mother died two years and a half before the testator, and that he made no change in his will in favor of his wife, is not without significance.

We conclude, therefore, that neither by the law, nor by the language or intent of the testator, can accretion be held to have operated in favor of the widow.

But it is said that legatees by universal or particular title profit by the caducity of particular legacies with the payment of which they are charged. C. C. 1704. This is undoubted, but by what process of reasoning can we say the widow's legacy was charged with the payment of the mother's? The testament does not say so, and there is no rule of law that says, directly or by implication, that where one third in full property of an estate is willed to A, the forced heir, and two thirds to B, a stranger, in usufruct, that the former is a charge upon the latter. If we were to decide by the importance of the two bequests, or by the relationship of the parties, the converse would be the conclusion. Besides,

the legacy to the mother is one under universal title, and not a particular legacy.

We hold, therefore, that the widow can not under the will claim the usufruct of the third bequeathed to the mother. But here another question arises. The legacy to the mother having lapsed by her predecease, does the property embraced in it go to the heirs *ab intestato* of Baptiste Dougart, or to the children of his sister Catherine Dougart? This depends upon the further question whether these children are universal legatees, for if they are they profit by the caducity to the exclusion of the heirs at law. See Hoover's Heirs vs. York and Hoover, 24 An. 375, and authorities there cited.

Again, if the lapsed legacy goes to the heirs *ab intestato,* as not being disposed of by the testator, then the widow's legal usufruct would attach and continue during her natural life. R. C. C. 915. But if it goes to the children of Catherine Dougart, by virtue of their being universal legatees, then the widow's legal usufruct never attached, because her deceased spouse had disposed of the property by will. Hence the question as to whether the widow has or has not a legal usufruct on this third, and therefore her accountability for its revenues depends solely upon the nature of the legacy to the children of Catherine Dougart. We repeat that if that legacy is not universal, the widow has a legal usufruct and is not accountable for the revenues. If they are only legatees under universal title, i. e., if their rights under the will are confined and limited to the naked ownership of the two thirds subject to the widow's usufruct, then the caducity of the mother's legacy can not profit them because that legacy *was not a charge upon their legacy.* See C. C. 1704. As before said it is only where the caducious legacy is a charge upon the legatees under universal title, or under particular title, that the failure of it inures to their benefit.

By the second clause of the will above quoted, the testator bequeaths to his wife, during her natural life, the usufruct "of all the balance," (i. e. all less one third) of his property, "*and at her death,*" (i. e. of his wife) "I give and bequeath the whole of said property to the children of my sister," etc. Do the words "the whole of said property" refer to the property he had just given in usufruct to his wife, or to his entire estate? We think they refer only to the property covered by the usufruct, and for two reasons :

First—The words " at her death," show that he did not intend any property to go into their possession until the death of his wife, on whom he had conferred, and show that their rights were restricted to, a life interest.

Second—The bequest to his mother is absolute, and was not made

in contemplation of her predecease, and he could not, therefore, have had any intent to confer her rights upon said children. Besides, if we held the bequest to the children extended to the third bequeathed absolutely to the mother, it is clear their right would be suspended until the death of the wife, thereby creating a sort of vacuity in the title, during the widow's life, which is not permissible. We conclude, therefore, that the third part of the estate bequeathed to the mother did not pass by the will, and that, therefore, by virtue of article 1709 C. C. it devolved, at the death of the testator " upon his legitimate heirs." Hence, also, the widow's legal usufruct attached at same date and she is not therefore chargeable with its revenues.

The fourth ground of opposition relates to the right of the usufructuary to renounce the usufruct, and demand re-imbursement of the sums advanced. It seems to us that this discussion is premature, for we have examined the record in vain for any evidence of such renunciation. We do not see how the fact that the executrix is also usufructuary can prevent her rendering an account as executrix, showing the condition of the estate—and if she has the right to render an account she has the right to have it homologated if correct. This is all she seeks or asks, and this is the substance of the decree appealed from. It homologates and approves the account. But as both parties have, in argument, treated the proceeding as a tacit renunciation, we shall proceed to give our views upon the subject.

Article 575 C. C. declares that " The usufructuary can release himself from the repairs which he is bound to make, *and even from the other charges of the usufruct,* by abandoning it, even when the owner has instituted a suit against him to compel him to make them or bear the expense of them, and though the usufructuary be condemned in such suit."

Articles 617 and 624 impliedly recognize also this right of renunciation. The French Commentators recognize the right of renunciation under the Code Napoléon. See Marcadé, volume two, pages 528, 542, and note at bottom of page 543. See also Proudhon, " Traité des droits d'usufruit," etc., volume four, section 1905, page 313, where he announces the doctrine relative to advances by the usufructuary, that he " can always render them exigible by renouncing to his right of usufruct."

The fifth ground of opposition is prescription. Under our law the right of the usufructuary to demand re-imbursement of sums advanced to pay debts does not arise until the expiration of the usufruct. Until then he has no action, and it is elementary that it is only after the right of action accrues that prescription commences to run. It would be idle to cite authority in support of this proposition. An examination satisfies us that none of the claims shown by the account were barred at the

time the usufructuary paid them and there has been no prescription acquired since. The plea, therefore, can not prevail.

We see no error in the judgment appealed from, and it is therefore affirmed with costs.

### ON APPLICATION FOR REHEARING.

EGAN, J. A rehearing of this cause is granted solely in regard to the sixteenth item of the account opposed, being " the Louis Mathé note and interest."

### ON REHEARING.

The note charged in the account of the executrix as having been paid to Louis Mathé, amounting with interest to $309 50, and placed on the account as item sixteen, is not to be found in the record. The only evidence to sustain this item is that of the executrix herself, and is too uncertain and indefinite, both as to the existence and payment of the note, to warrant its allowance. These facts were overlooked at the time of our former decree in view of the grave and more important issues involved in this litigation.

It is therefore ordered, adjudged, and decreed that the decree of this court heretofore rendered in this case be and it is so far changed and amended as to reject as of nonsuit the sixteenth item of the account of the executrix, to wit: the Louis Mathé note and interest, and that the succession pay the costs of appeal and of the oppositions of the appellants, and that in all other respects our former decree remain undisturbed.