OVERTON, J.
Frederick Schonekas and his wife, Anna E. Kolkas, lived in the city of New Orleans., Schonekas died in 1894, and his wife in 1921, both testate. Six children were born of this marriage, to wit, John J. Schonekas, J. Clement Schonekas, Adelia Schonekas, wife of Charles B. Kern, Frank J. Schonekas, Frederick W. Schonekas, and Lillie Schonekas, wife of Charles F. Leidenheimer. All of' these children were alive when their father .died, but at the death of Mrs. Schonekas only three were living, to wit, J. Clement Schonekas, Lillie S. Leidenheimer, and Frank J. Schonekas. Frank died during the pendency of this suit, but he left children, who have been made parties to these proceedings. Those of the children of Frederick Schonekas and his wife, who died before the death of their mother,. also left children, who have likewise been made parties to this suit.
After the death of Frederick Schonekas, his will was probated, and his succession was finally closed by recognizing his widow’s right to her half of the community of acquets and gains that existed between her and her husband, and by sending her into possession, as legatee, of the disposable portion of the property left ’by her husband, and, as usufructuary, of the remainder.
After the death of Mrs. Schonekas in 1921, her will was probated. Following its probation, suit was brought by some of the heirs against the others to effect a partition of the estates of both Mr. and Mrs. Schonekas. In the. court below, many of the questions that arose in the partition suit were satisfactorily settled by the judgment rendered, and therefore need not be mentioned here. However, in that court, Lillie Schonekas, who was, at the time her mother’s will was Written, the divorced wife of Herman Roos, but who is now Mrs. Leidenheimer, contended that the bequest of the disposable portion made to her and her sister, Delia Schonekas, by her mother, is a conjoint legacy, and that, as the bequest to Delia lapsed by the latter’s death, which occurred in 1910, some years prior to the death of the mother and testator, it passed by accretion to her, and did not, as contended for by her coheirs, fall into the estate to be divided among all of the heirs. Mrs. Leidenheimer met with an adverse ruling in the lower court with respect to this contention, and now urges in this court that the bequest - passed to her by accretion, as she did in the court below. It was also contended by some of the heirs, 'jn the trial court, with respect to a bequest of certain shares of stock of the Lafayette Fire Insurance Company made, in the same will, to Delia Schonekas, wife of W. S. Kern, .now deceased, and Lillie Schonekas, now Mrs. Leidenheimer, that the stock bequeathed to the latter should be collated by her. The lower court held that the collation contended for was not due,i and the heirs, who demanded it, complain in this court of the ruling made. It was also contended in the court a qua by some of the heirs that interest is due on moneys to be collated by J. Clement Schonekas1 to his father’s succession fr'om July 27, 1894, the date the money was received, and on moneys to be collated to his mother’s succession by him, by Lillie S. Leidenheimer, by the heirs of Delia S. Kern" and of Frank J. Schonekas from the dates the moneys were received by the respective donees, as advanced portions, but the lower court refused to allow interest on the collations to be made, for the reason that collation may be demanded only when a partition of the estate is had; and therefore, in the opinion of the court, no interest can be claimed against the heir until he has *406 been called upon to make partition, and has declined, refused, delayed, or failed so to do. The ruling made is unsatisfactory to the heirs demanding the payment of this interest ; and in this court they cite authorities to show that interest is due on cash collations from the date of the death of the donor, and submit that interest should be allowed on the above collations accordingly.
That part of the will of Mrs. Sehonekas, which shows the disposition which it is contended constitutes a conjoint legacy, and which shows the bequest of the stock, which gives rise to one of the demands for collation, reads as follows:
“In the event of my death, I give and bequeath unto my daughter Delia Sehonekas, wife of Charles B. Kern, and Billie Sehonekas, divorced wife of Herman Roos, shai-e and share alike, the disposable portion of my estate; that is so much, as the law will allow me to give to them, in addition to what they are entitled to as my children and heirs.
“I also give and bequeath unto my said daughters Delia Sehonekas Kern and Lillie Sehonekas, each ten shares of the capital stock of the Lafayette Fire Insurance Co. of this city, now standing in my name (making together twenty shares) this to be a special legacy before the disposable portion in general is ascertained.”
It is the bequeathing of the disposable portion of the testator’s estate to her two daughters, Delia Sehonekas, wife of Charles B. Kern, and Lillie Sehonekas, divorced wife of Herman Boos, now Mrs. Leidenheimer, share and share alike, to be found in the first paragraph of that part of the testament quoted, that Mrs. Leidenheimer contends constitutes a conjoint legacy. If Mrs. Leidenheimer is correct in her contention, then, as Mrs. Kern died before the testator, Mrs. Kern’s share of the disposable portion passed by accretion to Mrs. Leidenheimer, or, in other words, accreted to her. If the legacy is not conjoint, then the share of the disposable portion that wduld have gone by the will to Mrs. Kern, had she lived, falls to all of the heirs of the testator to be divided among them.
We shall first dispose of the question whether the legacy is conjoint. Article 1706 of the Revised Civil Code of this state provides :
“The right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles.
“Art. 1707. Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several conjointly.
“The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator’s having assigned the,part of such co-legatee in the thing bequeathed.
“Art. 1708. It [the legacy] shall also be reputed to be made conjointly when a thing not susceptible of being divided without deterioration, has been given by the same act to several persons, even separately.”
And article 1709 of the Revised Civil Code provides:
“Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed either to, a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs.”
It may here be observed that articles 1707 and 1708 of the Code, quoted above, are transcripts, respectively, of articles 1044 and 1045 of the Code Napoleon.
The right of accretion in testamentary dispositions is of ancient origin. It is said in one of the able and scholarly briefs filed in this case that:
“The genesis of the right of accretion is found in the Roman law covering three periods of Boman history; the first, prior to the Augustan age and the law of Julia and Papia Pop-pea (jus accrescendi); the second, under the laws of Julia and Papia Poppea (jus caduca vindicandi); and, third, under Justinian in his de cadueis tollendis. Before the laws of Papia the right of accretion was based on the mixtim conjuneti or conjunctio re et verbis, that is. to say, upon the intention of the testator express *408 ed in his will. Under the laws of Papia, in order to discourage celibacy (celibates) and childless unions (orbi), (conditions resulting from advanced civilization and luxury, from the extremes of great wealth among the few and great poverty among the many), and to encourage an in,crease in population, the caducous parts of testamentary dispositions were ordered bestowed in the ease of conjunction upon those colegatees who had children (colegatarii conjuncti patres); in default of these upon the heir with children (heredes patres), and in the case of disjunction upon those heirs who have children. Thus, by the Papian laws, the intention of the testator was entirely disregarded. All of which, along with the rule of the Roman law that no man (except military men) could .die partly testate and partly intestate, it is not to be wondered at that this section of- Roman jurisprudence became a maelstrom of confusion and contradiction. In abol-' ishing these laws Justinian returned to the ancient landmark andi set up a rational foundation for the right of accretion — the intention of the testator in calling all the legatees to- the whole of the thing bequeathed conjointly and undividedly.”
Counsel cite, in support of this outline of Roman legal history, Grenier, vol. 1, c. 4, par. 111, p. 603; Furgole, c. 9, p. 103; Huc. vol. 6, pp. 504 to 507, par. 5, book 3, tit. 2; Domat, book 3, tit. 1, § 9; Gaius Com. 2, par. 199 et seq.; Gaius 2, par. 206, 207; Ulpian Regul, tit. 19, par. 17, tit. 12 par. 2, tit. 18; Ulpian Frag. par. 12, 13, tit. 24; L. 80 ff. No. 1; L. 16, D. Leg. 3; L. 1, par. 11, c. 6, 50 De Caducis Tollendis.
Ricard defines the right of accretion as follows:
“Accretion can only have its effect when the same thing is left to two or more persons, undivided and solidarily, and that the partition and division should not be made but by concourse of the colegatees; so that when they have all concurred, 'as by that concourse the solidity is taken away and the partition made, the right of accretion has not taken place; but, if one of the colegatees does not come to take his share, the division is not made; and the solidity remains to those who receive the legacy, which is that which we eall the right of accretion.” Ricard, Part 3, No. 445. Quoted approvingly by Grenier, Traité des Donations, Ed. of 1807, p. 237.
In the Succession of Hunter, 45 La. Ann. 262, 12 South. 312, this court, quoting from Marcadé, under article 1045 of the Code Napoleon, in his work “Des Donations et Testaments,” says, to use the English translation of the quotation, found in one of the briefs, which appears to be correct, that:
“We have seen in the preceding title that accretion (but the appellation is a little inexact since it is better a nondecretion) is the right to take in a succession or in a legacy, a part to which one is called, but which he would not have if all those co-interested would receive; it is established on behalf of the heir’ or legatee not that, says Cujas — ut plus habeat, but well that ne minus habeat. It is plain, in effect, that the predecease of a coheir or co-legatee cannot create for those cointerested with him a right which they would not have had primarily; for, to- receive the entirety, one must have vocation to that entirety, vocation which could not have full effect if all would receive quia concursus partes fierint.”
And in the Succession of Dougart, 30 La. Ann. 268, the court, after quoting the above from Marcadé continues to quote from him, approvingly, as follows:
“Therefore, in order to know if there is room for accretion to the profit of the successor, it is necessary to consider whether the successor has been called to the whole.” Marcadé, vol. 4, pp. 144, 145.
And, in the Succession of Hunter, cited supra, the court quoted approvingly from Dalloz “Les Codes Annotés,” under article 1044, Code Napoleon, No. 39, as follows, to translate it:
“The only difficulty is to know when there is an assignation of parts. Following an opinion; there is assignation of parts not only when the testator has distinctly determined the portion which he gives to each, a case which never has any difficulty, and which the Legislature has no concern to regulate, but, also, in the ease where the testator, after having bequeathed to several persons the same thing, adds that it is bequeathed by virile portions or by equal parts and portions. Jurisprudence Générale, Entre Vifs, 4410.” (Italics ours.)
Some of the French commentators adopt the view that accretion takes-place, notwith *410 standing the assignation of parts made by the testator, if the assignation relates solely to the execution of the legacy, that is, if it is merely accessory and regulational and not primary. This distinction is recognized by Toullier, where, in Droit Civil Francais, vol. 5, Nos. 690, 691, he says:
“But this right (the right of accretion) ceases if the testator, in uniting the legatees in one and the same disposition, assigns to each of them what is given him in the thing bequeathed. They are then called conjoint by words only, conjuncti verbis tantum.
“For example: I give to Peter, Paul, and John, the Cornelian estate in equal portions, or by thirds. Each legatee is then no other than a donee for the portion which is assigned him, and has no right to the other portions.
“If the testator unites the legatees in the same phrase, it is to be. presumed that he does it but for abbreviation, propter sermonis compendium, and not to give them the i^ight to take the portions which become caducous.
“Nevertheless, it must be distinguished if the' assignation of parts is found in the disposition itself, or solely in its execution. In the example thus proposed, ‘I give to Peter, Paul, and John the Cornelian estate in equal portions, the distinction and assignation of parts are in the disposition itself; they make a part, they are inseparable in each; thus, in principle, each one has the right only to that portion which is especially assigned to him.”
“On the contrary, if it is said ‘I give to Peter, Paul, and John the Cornelian estate, for to be divided between them in equal portions, they remain conjoints re et verbis in the first member of the phrase, which contains the disposition and which includes, in principle, the destination of the totality in favor of each of the legatees. They have no parts assigned to them save in the second member, which is an accessory phrase united to the first by conjunction (pour) ‘for,’ and it is tied on to determine the manner of executing the disposition, without Otherwise destroying the rights given in the first member to the legatees through which they have, nevertheless, the right of accretion of the parts which become caducous.
“In accordance with these principles, the court of cassation, by decision of October 19, 1808, reversed a judgment which decreed that the right of accretion did not take place in a testament where Sieur de la Porte hadl instituted as his heirs by the disposition, the Sieur Planté and his two sisters to make and dispose of his estate in equal portions.
“This distinction, which may appear subtle to minds less attentive, is nevertheless founded in the nature of things. There exists a sensible and very real difference between this formula: T institute Paul, Peter, and John, each for a third or each for an equal portion,’ 'and the formula: T institute Paul, Peter, and John, my heirs, in order that they may divide my estate by equal portions or by thirds.’
“In the first, each of the legatees is not called, in principle, but for a third; the parts are made in the disposition. In the second, each is called, in principle, for the totality; the parts are not made but in the clause of execution; it is the presence of the colegatees which operates the partition, concursu partes fiunt.”
The same distinction is recognized by Baudry-Lacantinerie in des Donations et des Testaments, vol. 2, p. 431, No. 2906, wherein it is said:
“Although article 1044 (our, article 1707) seems to decide in absolute terms that .the conjunction verbis tantum does not give place for accretion between colegatees, the jurisprudence admits, in this regard, a distinction which finds its source in the Homan laws.
“The conjunction verbis tantum does not give place for accretion when the assignation of parts strikes on the disposition itself, when it is principal and dispositive; for example, if the testator said, T give a certain estate to Peter and Paul, each a half.’ Here the testator does not give but a half to each legatee; there is, then, between them, no solidarity of vocation, and, accordingly, the foundation for accretion makes default.
“But, on the contrary, assignation of parts made by the testator does not hinder accretion, if it relates solely to the execution of the legacy, if it is accessory and regulational. Such would be a disposition conceived) thus, T give a certain immovable to Peter and Paul; for them to partition by halves.’ Here it is said that the thing is bequeathed entirely to each legatee; the testator simply indicates in what proportions the legatees are to partition, should they all come to receive the legacy.”
In Parkinson v. McDonough, 4 Mart. (N. S.) 246, the court recognized the distinction mentioned by Toullier in that part of his work, quoted immediately preceding the last quotation, and said:
“The distinction between a bequest of a thing to many in equal portions; and one wherein a *412 testator gives a legacy to two or more individuals, to be divided in equal portions, appears at first view extremely subtle and refined. The difference of phraseology in those two modes of bequeathing is so slight as not readily to convey to the mind any difference in ideas, and can only produce this effect by separating the members of the sentence in the latter phrase; in truth to create two distinct sentences, each complete in itself with regard to sense and meaning; the one relating to the disposition of the will, the - other to its execution. We might hesitate much in adopting this method of construction, 'were it not sanctioned by the authorities cited in behalf of the appellants; the doctrine contended for is fully supported by the commentary of Toullier on the one thousand forty-fourth article of Code Napoleon, which we have already shown to be precisely similar to that of our own Code on the same subject. See 5 Toullier, pp. 845, 646, and 647, Nos. 689, 690, 691, 692.”
In Mackie v. Story, 93 U. S. 589, 23 L.Ed. 986, the distinction mentioned above and adopted in the Parkinson Case was recognized and applied.
In the case at bar, in our opinion, the bequest in question is not a conjoint legacy. It is manifestly not conjoint within the meaning of article 1708 of the Civil Code, for it cannot be said, nor is it even contended, that the disposable portion, of which the legacy consists, is not susceptible of division without deterioration. It is not a conjoint legacy, within the meaning of article 1707 of the Civil Code, as shown by the authorities cited, because the testator in making the disposition assigned the part of the co-legatees in the thing bequeathed, when, to quote that part of the will involved, she said:
“I give and bequeath unto my daughters, Delia .Schonekas, wife of C. B. Kern, and Lilly Schonekas, divorced wife of Herman Roos, share and share alike, the disposable portion of my estate; that is so much, as the law will allow me to give to them in addition to what they are entitled to as my children.”
Here each of the legatees is no.t called to the legacy for the totality, that is to say, for the whole, but only for a half of the whole. There is therefore no solidarity of vocation or calling between them. Here the assignation of parts affects the disposition itself, and is, for that reason, principal and dispositive, and not accessorial and regulational. There is no difference between bequeathing the property share and share alike to the legatees, and the illustration given by Baudry-Lacantinerie, which is, to repeat it, “I give a certain estate to Peter and Paul, each a half,” or between the present disposition and the illustration given by Toullier, which is, “I give to Peter, Paul, and John the Cornelian estate, in equal portions, or by thirds.” The1 illustrations given by the two commentators, as we have seen, are recognized by them as not constituting conjoint legacies, and are given' as illustrations in showing when a legacy is conjoint and when not. If, as observed by counsel for some of the heirs, the disposition had read, “I give to my two daughters the disposable portion, to be divided between them,” then the disposition would have been in accordance with the second illustration given by the authors cited, and similar to the disposition in the will in Parkinson v. McDonough and in Mackie v.' Story, and the legacy would have been deemed conjoint, as each then would have been called to it for the whole, and the clause relative to division would have been deemed accessorial and regulational, and not principal and dispositive.
We therefore conclude that, when the legacy to Mrs. Kern, lapsed by her death, which occurred prior to the death of the testator, it did not accrete-to Mrs. Leidenheimer, and that, as it was not conjoint within the purview of articles 1707 and 1708 of the Civil Code, it fell, under the terms of article 1709 of the Code, to all of the heirs of the testator, to be divided among them according to law.
In concluding, we may also say that the views here expressed are not in conflict with those stated in Lebeau v. Trudeau, 10 La. *414 Ann. 164 and in the Succession of Villa, 132 La. 714, 61 South. 765, cited by Mrs. Leidenheimer. Those cases rest upon the same general principle upon which rests the case of Parkinson v. McDonough.
With respect to the demand that Mrs. Leidenheimer collate the ten shares of the stock of the Lafayette Insurance Company given her, or its value, collation in our opinion is not due. The stock, as we have seen, was given her by the will in controversy. It is manifest that it was given therein as an extra portion. The will in fact so declares. It is therefore clear that the testator intended that Mrs. Leidenheimer should have this stock as an extra portion, and hence that she should not be required to collate it. The only purpose that could exist for requiring the collation would be to reduce the amount of the total bequests made to Mrs. Leidenheimer to the disposable portion. Granting that the demand for collation is the proper course to pursue to effect that purpose, still it does not appear that the total bequests made to Mrs., Leidenheimer exceed that portion. Hence there is, in this instance, no reason for collation. C. C. art. 1231.
Lastly, we come to the question whether interest is due on the various advances made by Mr. and Mrs. Schonekas, which advances have been ordered by the court to be collated. In King v. King, 107 La. 437, 31 South. 894, this court said that:
“Ordinarily interest is not due on amounts brought to the mass by collating heirs. But this is an exceptional ease. This heir bound himself to pay interest.”
On the other hand, it was held, in Succession of Carroll, 48 La. Ann. 956-972, 20 South. 210, without, however, assigning any particular reason therefor, that interest was due on amounts received and to be collated by heirs from the date of the death of their ancestor. And, in Succession of Weber, 110 La. 674-688, 34 South. 731, following the ruling in the Succession of Carroll, a similar ruling was made.
The trial judge refused to allow interest for the following reasons:
“Thus I have shown that the advances in money or property received by an heir, and which he is obliged to collate, can only be collated, and the demand for collation can only be made when a partition of the estate is had; that the return of the money actually or by taking less, only accrues and is due on the day of partition, and for this reason, in my opinion, no interest can be claimed against the heir until he has been called upon by the notary to make partition, and declined or refused or failed so to do.”
In this case there was no agreement to pay interest. The money was given as advanced portions. It was not contemplated, therefore, that it should be returned until the partition was had. It may be said that the obligation to collate it did not mature until the partition was had. It was then only that the money could be collated. In the absence of an agreement to the contrary, debts do not bear interest, except from maturity. In our view, the ruling of our brother of the lower court is correct.
For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.